W. R. SARTOR, Appellee, v. JOHN P. SCHADEN, Appellant.

**Trade marks:** INFRINGEMENT. A trade mark is an arbitrary, distinctive name, symbol, or device, to indicate or authenticate the origin of the product to which it is attached; and its infringement consists in a use of the original trade mark, or a reproduction, upon substituted goods in such a way that they are likely to be mistaken for the genuine product.

**Trade names.** One may acquire a property right in the use of a trade name, although not selected and registered as a trade mark, which the courts will protect in the interest of fair competition.

**Wrongful use of trade name:** CAUSE OF ACTION. A cause of action for the wrongful use of a trade name by another, arises where there is a confusion of goods put upon the market by the respective parties, where there have been actual mistakes or sales of one product for another, or where the similarity is such that one product may readily be mistaken for the other.

**Wrongful use of trade name:** DEFENSES. It is not a defense to an action to enjoin the wrongful use of a trade name, that plaintiff had no right to trade mark the name, or that the parties might sell it to others, or that it was in use in other localities when adopted by the plaintiff.

**Estoppel.** Delay in asserting a right to the exclusive use of a trade name until an injury results from the wrongful use of the name by another, will not work an estoppel.

**Wrongful use of trade name:** EQUITABLE RELIEF: FRAUD. One seeking to protect his right to the exclusive use of a trade name, will not be denied relief because of innocent misrepresentations concerning the same, made with no intent to deceive or mislead. Under this rule, the fact that plaintiff attempted to register his label as a trade mark in this State at a time when he did not know of its use by others, and believing that he had the right to do so, was not such fraud or deception as to bar him of relief.

**Appropriation of a trade name:** FRAUD. The exclusive appropriation of a stock label as a trade name, sold by printers who had not copyrighted the design and who did not contract against such appropriation, was not a fraud upon the printers.

*Appeal from Polk District Court.*— HON. JAMES A. HOWE,
Judge.

WEDNESDAY, NOVEMBER 23, 1904.

SUIT in equity to enjoin defendant from using a trade-
mark or trade-name adopted by plaintiff for a brand of
cigars manufactured and sold by him in the city of Des
Moines and immediate vicinity.   The trial court granted
the relief asked, and defendant appeals.— *Affirmed.*

*Henry H. Griffiths* and *S. C. Sweet,* for appellant.

*Orwig & Lane,* for appellee.

DEEMER, C. J.— The original petition counted upon
a registered trade-mark adopted by plaintiff for his cigars,
being the word " She " in large letters, which was pasted
upon the inside lid of cigar boxes containing cigars manu-
factured by plaintiff.   This was amended by claiming that
plaintiff had adopted the word as a trade-name, under which
he had built up a large demand for his goods, and that
defendant was guilty of unfair competition or trade in
adopting the same name or label, not only with intent to
deceive the public, but for the purpose of securing the trade
theretofore established by the plaintiff.   A great many de-
fenses were interposed, to some of which we shall refer dur-
ing the course of this opinion.   The case was tried on an
agreed statement of facts and some exhibits introduced by
the parties, and a decree for plaintiff was rendered as prayed.
From this agreed statement and the exhibits we extract the
following, which are deemed material to a proper decision
of the case:

Plaintiff did not coin the word "She."   The label
used by him bearing this name was designed by a printing
concern in the State of New York in the year 1893, and
was sold by it as a stock label from that time down to the

time of the trial of this case. In the year 1894 plaintiff purchased a number of these labels, which he placed upon cigar boxes containing cigars made by him, and sold them to retail dealers doing business in Des Moines and a few surrounding towns. He made his cigars from selected stock, expended large sums of money in advertising this brand of cigars, and established a good trade therein. In 1900 plaintiff discontinued the use of the label made by the New York firm, and procured a somewhat different design, but bearing the same talismanic word "She," from a printing house doing business in Wisconsin. These labels he used in the same manner as the original stock label. Defendant is not a manufacturer, but a wholesaler in cigars, whose territory covers Des Moines and vicinity, as well as some other towns and cities not reached by the plaintiff. In the year 1902 he purchased from the New York print-shop some of the stock "She" labels, and directed a manufacturer at Davenport to make some cigars for him which should be placed in boxes bearing this "She" label; and these cigars so manufactured for him, and others manufactured by others for him, bearing the stock label above described, were sold by him in the territory where plaintiff had established his trade, and to dealers to whom plaintiff had previously sold. Many buyers of cigars handled by defendant under the stock label "She" purchased them believing that they had been manufactured by the plaintiff, and some of these persons complained to the plaintiff of the quality of the cigars so purchased. Defendant sold his cigars at a less price than plaintiff sold the same brand for, and, for one reason or another, did a considerable and increasing business in this brand of cigars. Defendant never expressly stated that the cigars he was handling were made by plaintiff, but he sold to the same dealers who had theretofore purchased plaintiff's goods, and evidently intended to take advantage of the reputation gained by plaintiff for his product.

It is also admitted that cigars were sold at various places in Iowa bearing a " She " label from the year 1886 down to the present. Some of these were the identical stock labels first used by the plaintiff, but others bore the name of the maker in addition to the word " She "; and still others contained pictures of reclining human forms, and the name of the manufacturer. But at the time plaintiff adopted the label no one was selling cigars in the territory in which he did business bearing the " She " label, nor did they until about the year 1902, when one Smith commenced the use thereof, as also did the defendant. Plaintiff did not know of the use of the " She " label prior to the time he adopted it, and believed himself to be the only cigar maker or dealer in the State using a label bearing the word " She " as an essential feature. During the year 1899 he became advised that others in the State were contemplating the use of the same, and he caused the label he had been using to be registered as a trade-mark with the Secretary of State, under our State law. The printers of the label did not consent to this registration, however. It was the custom of these printers not to sell labels to competing cigar manufacturers or dealers in the same locality at the same time. These labels were never copyrighted by the printers, but no one else has ever printed or sold the identical stock label printed by them.

These are all the material facts, and we now come to the law of the case.

Plaintiff has abandoned all claim to a right to the exclusive use of the " She " label on account of his having registered the same as a trade-mark; hence we shall not have occasion to consider the law on that subject, except incidentally.

The case must turn primarily upon the doctrines applicable to that practically new branch of the law known as " unfair trade." These rules, while new, are nevertheless well settled, and easily stated abstractly. Difficulty only

arises in making application thereof to concrete cases. There is a well-marked distinction between what is known as the "infringement of a trade-mark" and "unfair competition." A trade-mark is an arbitrary, distinctive name, symbol, or device, to indicate or authenticate the origin of the product to which it is attached. And an infringement thereof consists in the use of the genuine upon substituted goods, or an exact copy or reproduction of the genuine, or in the use of an imitation in which the difference is colorable only, and the resemblance avails to mislead, so that the goods to which the spurious trade-mark is affixed are likely to be mistaken for the genuine product; and this is upon the ground that the trade-mark adopted by one is the exclusive property of its proprietor, and such use of the genuine or of such imitation of it is an invasion of his right of property. Consequently in infringement cases we have all sorts of questions regarding what names and devices may be exclusively appropriated, whether or not they have been dedicated to the public or abandoned by the holder, and many other intricate and puzzling problems which are not as yet fully settled.

*1. TRADE MARKS: infringement.*

But aside from the law of trade-marks, courts will protect trade-names or reputations, although not registered or properly selected as trade-marks, on the broad ground of enforcing justice and protecting one in the fruits of his toil. This is all bottomed on the principle of common business integrity, and proceeds on the theory that, while the primary and common use of a word or phrase may not be exclusively appropriated, there may be a secondary meaning or construction which' will belong to the person who has developed it. In this secondary meaning there may be a property right. *Scheuer v. Muller,* 74 Fed. Rep. 225 (20 C. C. A. 161), and excellent note; *Hygeia Dist. Co. v. Hygeia Co.,* 70 Conn. 516 (40 Atl. Rep. 534); *Walter Baker & Co. v. Sanders,* 80 Fed. Rep. 889 (26 C. C. A. 220); *American Waltham Co. v. U. S. Watch*

*2. TRADE NAMES.*

*Co.,* 173 Mass. 85 (53 N. E. Rep. 141, 43 L. R. A. 826, 73 Am. St. Rep. 263).

Consequently unfair competition is distinguished from trade-mark cases in this: that it does not involve necessarily the question of the exclusive right of another to use the name, symbol, or device. A word may not be capable of becoming an arbitrary trade-mark, and yet there may be an unfair use of the word which will constitute unfair trade. The whole doctrine is based upon the theory of protection to the public whose rights are infringed or jeopardized by confusion of goods produced by unfair methods of trade, as well as upon the right of the complainant to enjoy the good will of a trade built up through his efforts, and sought to be taken from him by unfair methods. Whether or not such facts are shown as to bring a particular case within these rules depends upon the testimony in each particular case in which the issue arises, and if it appear that such confusion has been or is likely to be produced, that there have been actual sales of one product for the other, that there have been actual mistakes of one for the other, or if there be such similarity of the two brands as that one may readily be mistaken for the other, a case is made out. *Fairbank Co. v. Luckel, King & Cake Soap Co.,* 102 Fed. Rep. 327 (42 C. C. A. 376); *G. W. Cole Co. v. American Cement Co.* (C. C. A.), 130 Fed. Rep. 703.

<div style="margin-left:2em"><small>3. WRONGFUL USE OF TRADE NAME: cause of action.</small></div>

With these rules in mind, it appears to us that plaintiff has clearly shown his right to an injunction, unless it be for certain defenses interposed by defendant, to which we shall hereafter call attention.

In this connection, it is immaterial that plaintiff had no right to trade-mark the name, that the printers had the right and authority to sell the label to whomsoever they would, or that the label was in use in other localities at the time plaintiff adopted it for his cigars. It had acquired in the locality in

<div style="margin-left:2em"><small>4. WRONGFUL USE OF TRADE NAME: defenses.</small></div>

which plaintiff did business a peculiar secondary meaning, and stood for a brand of cigars made by the plaintiff, upon which he had built up a large trade. Defendant had no right to palm off his goods as those made by the plaintiff, or to so use the label adopted by plaintiff as to deceive purchasers who wished to purchase plaintiff's goods. Plaintiff had gone to large expense in building up his trade on these particular cigars, and is entitled to be protected therein.

But defendant contends that plaintiff, on account of his laches, is estopped from now insisting upon an exclusive right to use the label for cigars within the territory in which he does business. Plaintiff did not know of the use of the label in Iowa, and was not concerned therein, until some one entered his territory and sought to deprive him of his trade. He did not know of the use by others in the State at large until the year 1899, and he had no occasion to interfere or to attempt to interfere with that use until some competitor entered the field and engaged in unfair competition with him. This was not done until the year 1902. Shortly after the defendant began the use of the name, plaintiff requested him to stop it; and, as he failed to do so, plaintiff brought this action in February of the year 1903. There was no such delay as to work an estoppel. If plaintiff's action were bottomed solely upon a trade-mark, we should have a decidedly different problem to deal with. But as already said, plaintiff has abandoned his claim to a valid trade-mark. The use of the word in other States or in other parts of this State by persons who did not compete with plaintiff is not controlling on the issue of unfair competition. There cannot be unfair trade unless there be competition, and in many cases, if not in most, this competition is of necessity local. The issue of unfair trade cannot arise until there is such a showing of fraud or deception as we have hitherto indicated.

It is further argued that plaintiff has himself been guilty of such fraud and deception as to bar him of any

5. ESTOPPEL.

relief.   Of course, plaintiff must come into a court of equity

6. WRONGFUL USE
OF TRADE
NAME: equi-
table relief;
fraud.

with clean hands.   If. he himself has been guilty of unfair competition, or has made false statements on his label, calculated to deceive the public as to the nature of his wares, as to the makers of the article, as to its constitutent parts, as to its being patented, or any other statements calculated to mislead or defraud, this will deprive him of his right to complain of the defendant for a fraud practiced by him.   This is fundamental doctrine, and we need not here cite any authorities in its support.   They may be found in 28 Am. & Eng. Enc. of Law. (2d Ed.) pages 352–357, inclusive.   But innocent misrepresentations, made without any intent to deceive or mislead, will not deprive a complainant of relief.   *Edison v. Thomas Edison Co.* (C. C.) 128 Fed. Rep. 1013; *C. F. Simmons Co. v. Mansfield Drug Co.,* 93 Tenn. 84, (23 S. W. Rep. 165); *Clark Thread Co. v. Armitage* (C. C.), 67 Fed. Rep. 896 (s. c. 74 Fed. Rep. 936, 21 C. C. A. 178); *Metzler v. Wood,* 8 Ch. Div. 608.

The exact fraud relied upon in the case at bar is the registration of the label as a trade-mark, a statement upon the second form of label used by plaintiff to the effect that it was a registered trade-mark, and his statement in the original petition filed by him that he had a trade-mark in said label.   If any of these things were done with intent to defraud, or if their doing in itself constituted a fraud, doubtless plaintiff should be turned away without any relief. But it is expressly stipulated that plaintiff did not know of the use of the label by others in this State prior to the time he registered the same, and that he believed he had the right to register the same as a trade-mark.   He had the mark registered because he heard that others were about to use it. This, it seems to us, fully acquits the plaintiff of any actual fraud.   True, he stated on his labels, after registering them, that his trade-mark was registered, and this was literally true.   Whether or not the registration was of any validity

is another question. The chief value of any registration is that it makes out a *prima facie* case of appropriation as a trade-mark. The registration concludes no one, and we cannot think it is the duty of one about to register a trade-mark to run all over the State to discover whether or not some other person in another locality has made use of the same word or device in his business. No such burden should be imposed on one who attempts to register a trade-mark. It is not required of a patentee, and we do not think the rule is any more strict as to one desiring to register a trade-mark. If plaintiff had had notice of a prior appropriation, and had sought to acquire some rights, or even evidence against a prior user, in order to defeat his property rights therein, we would have an altogether different case. But nothing of the kind appears here. Plaintiff was simply endeavoring to protect his own trade as against what promised to be unfair competition with him, and this he had a right to do, so long as by so doing he was not attempting to gain an unfair advantage over others. The mere fact that others were in fact using the same trade-name in other jurisdictions is not controlling. One person may have a trade-mark in one country or jurisdiction, and another the same trade-mark in some other State or country. *Derringer v. Plate,* 29 *Cal* 293 (87 Am. Dec. 170); *Richter v. Reynolds,* 59 Fed. Rep. 577 (8 C. C. A. 220); *Carlsbad v. Kutnow,* 71 Fed. Rep. 167 (18 C. C. A. 24). This is the rule applied to trade-marks, and, when the question of unfair trade is involved, one person may have a property right in the secondary use of a word in one locality, and another in the same word or device in another. This is one of the distinguishing features between a trade-mark, strictly speaking, and a trade-name. One is of necessity geographical, and covers the entire limits of the jurisdiction of the sovereignty granting the right; and the other is of necessity local, not founded upon any authority or right from the State, but based upon usage in the particular locality or

localities in which the party is doing or seeks to do business. *Draper v. Skerrett* (C. C.), 116 Fed. 206; *Hainque v. Cyclops Works,* 136 Cal. 351 (68 Pac. Rep. 1014); *Clark Thread Co. v. Armitage, supra.*

But it is argued that the exclusive appropriation of the stock label as a trade-name resulted or was likely to result in a fraud upon the printers thereof. Not so we think. The printers had the right to print these labels, and to sell them to whomsoever they saw fit. They are not enjoined from the printing thereof, nor could they be. Defendants are not enjoined from buying them, except inferentially. These printers did not see fit to copyright their design; hence any other person could print it who saw fit to do so. It is the use of the label with intent to deceive and injure the plaintiff which is enjoined. By selling the label to manufacturers, they knew or should have known that each of these might build up a trade thereon which would be entitled to protection under the doctrine of unfair trade. This they recognized when they made a rule not to sell to more than one dealer in the same locality at the same time. They are not permitted to destroy another's trade, built up on the strength of labels sold him, because they have a right to sell to whom they will. It is held in a great number of cases, which need not at this time be cited, that one may not even use his own name, to which he is supposed to have an inalienable right, if to do so would amount to unfair trade. If he cannot do this, it certainly ought not to be contended that one may use a trade-name belonging to another because forsooth he had the right to buy, and the printer the right to sell him, the label. It is the unjust and unfair use of the label only which is prohibited. The printers knew when they sold their labels to the plaintiff that he purposed using them as a distinctive brand for cigars made by him, to be sold in the locality where he did business. They knew, or should have known, that property rights might grow up

7. APPROPRIATION OF TRADE NAME: fraud.

around the use of this label, and that the demand for these labels might in that way be somewhat curtailed. They could easily have avoided this by using some distinctive feature which would indicate that the subsequent label was not for goods made by a prior customer to whom they had sold labels. If appellant's contention in this respect were sound, it would entirely destroy the doctrine of trade-names, in so far as they are prepared or printed by others upon paper or board to be used as cartons, wrappers, or labels for any sort of manufactured goods. The registration of any such as a trade-mark would, if appellant's contention be correct, be a fraud upon them, in that it deprived them of a right to sell to whom they would. If these printers desired to protect themselves, they could have done so by contract, or they could have had their design copyrighted. But this they did not do. Every one is presumed to know the law, and of the right of another to secure the exclusive use of a device, symbol, or mark, and they must take the chance on such use becoming exclusive in him in a particular locality. They have no property in the word " She," nor in the designs sent forth by them, except as they copyright these designs. But we need not further elaborate this proposition. The principal points relied upon by appellant are that plaintiff could not obtain an exclusive right to the use of the name " She " upon a stock label, and that he was guilty of such fraud as disentitles him to relief in equity. Neither of these propositions is sound, although both might have been, had plaintiff been relying upon a trade-mark.

Without further elaborating this opinion, which has already exceeded due bounds, it is sufficient to say that we agree with the trial court in its conclusions, and its decree is *affirmed.*