THE MOTOR ACCESSORIES MANUFACTURING COMPANY, Appellant, v. THE MARSHALLTOWN MOTOR MATERIAL MANUFACTURING CO., BENTLEY W. SINCLAIR and VIGGO N. HANSEN, Appellees.

Unfair competition: TRADE MARKS AND NAMES: FRAUD. Unfair competition in trade consists in conducting a trade or business in such manner that there is an express or implied representation that the goods or business of one is the same as that of another; and applies where one simulates a particular device or symbol of another in such manner as to lead an ordinarily prudent person to believe that the goods are those of the other, thus perpetrating a fraud upon the person deceived and upon the general public dealing in such goods. The basis of an action for unfair competition is fraud, and this may

be shown by direct testimony, or by facts and circumstances, or may be inferred from the manner in which the business is conducted.

**Same:** INJUNCTION. Courts of equity will enjoin the fraudulent use of a name, device or symbol used for the purpose of depriving another of a business thus established, and of the profits flowing therefrom; even though the name, device or symbol is one that cannot be protected as such, if by long use it has acquired a secondary meaning as designating the business or goods of a particular person, and the public has come to know his goods by that name or symbol.

**Same:** TRADE MARKS AND NAMES: FRAUD: EVIDENCE. Any person has a right to manufacture a particular article, except such as may be protected by patent, in such manner, shape and form as is essential to its use and purpose for which intended. The necessary features of its construction, which are common to articles of that class, cannot be appropriated by one person to the exclusion of another. In this action to restrain the manufacture and sale of a spark plug the evidence is held insufficient to establish unfair competition, or that any one was deceived or that confusion resulted.

*Appeal from Marshall District Court.*—HON. CLARENCE NICHOLS, Judge.

FRIDAY, OCTOBER 23, 1914.

ACTION to enjoin the defendant from manufacturing or selling a certain spark plug, claimed to be made in imitation of spark plugs manufactured by the plaintiffs, alleging that the same contain special features which distinguished plaintiff's manufactured article from all others, and to enjoin the defendant from using its corporate name, claiming that the same resembled plaintiff's to such an extent that it caused confusion to the public mind, thereby injuring plaintiff's business.    Decree for the defendant dismissing plaintiff's petition.    Plaintiff appeals.—*Affirmed.*

*F. E. Northup,* for appellant.

*Boardman & Lawrence,* for appellees.

GAYNOR, J.—Prior to February, 1910, the original plaintiffs in this suit, E. J. Beeve and Charles C. Eldridge, were engaged in the business of selling automobiles at Marshalltown, Iowa. About February, 1910, they began the manufacture of spark plugs in connection with one C. F. Johnson, under the trade-name of Motor Accessory Manufacturing Company. As then organized, it constituted a copartnership. On the 2d day of June, 1911, as such, they filed a petition in the district court of Marshalltown, in which they prayed for an injunction against the defendant, alleging, among other things, that Viggo N. Hansen, who is one of the defendants herein, was, at the time they began the manufacture of their spark plugs, in the service of the plaintiff as a salesman, and as such acquired a knowledge of the peculiar characteristics of the plaintiff's spark plug and of the manner in which plaintiffs were manufacturing the same. On or about the 11th day of March, 1911, the defendant Hansen severed his connection with the plaintiffs, and immediately, and in connection with one Sinclair, organized and incorporated another company under the name of the Marshalltown Motor Material Manufacturing Company, for the purpose of manufacturing spark plugs in imitation of those made by the plaintiffs, and with the intent of profiting by the reputation that plaintiffs had built up. Immediately upon the organization of this company, the defendants commenced the manufacture of and put on the market spark plugs containing all the essential and novel features of the spark plug invented and manufactured by the plaintiffs, and closely resembling it in form and general appearance. The spark plug manufactured by the plaintiffs is called the ''Hel-Fi,'' and embodied some new and useful improvements upon which a patent had been applied for, and an application for a patent then pending in the Patent Office of the United States.

Plaintiff further says that the principal feature which distinguished the spark plug manufactured and sold by the defendants from the ''Hel-Fi'' is the cutting of V-shaped

notches in the end of the electrodes, and says that this is one of the features of the invention for which a patent had been applied, and is one of the features of plaintiff's invention in spark plugs; that the defendant adopted this prominent feature of the spark plug to the extent of giving it the name "The V-Ray Spark Plug;" that the notches in the electrodes are in the ends of the small electro wires, and are inconspicuous to the eye; that in general appearance the spark plug made by the defendants is nearly identical with the "Hel-Fi," and the various parts are interchangeable; that the similarity is so great as to deceive the public and the ordinary purchaser, by means of which defendant did deceive the public and was enabled to palm off its spark plug for the spark plug of the plaintiffs.

Plaintiffs further complain of the similarity of the corporation names, inasmuch as both companies do business at the same place, claiming that it tended to cause confusion and deception, and has a tendency to divert to the defendant orders which are intended for the plaintiffs; that the defendant has obtained and filled orders which were intended for the plaintiffs, and which would have come to the plaintiff except for the similarity of names.

On the 9th day of September, 1912, the plaintiffs amended their petition, alleging that, since the commencement of this action, the plaintiffs in the original suit had incorporated, using the trade-name of the copartnership as its corporate name, to wit, the Motor Accessories Manufacturing Company. The defendant admits that it is a corporation, and that they are engaged in the manufacture of V-Ray Spark Plugs, but denies all other allegations.

Upon the issues thus tendered, the cause was tried to the court, and a decree entered dismissing plaintiff's petition. Plaintiff appeals.

These essential facts appear from an examination of the record: At the time this suit was commenced, the defendants were making a spark plug called the V-Ray; that plaintiffs

were making a spark plug called the Hel-Fi. The defendant's spark plug has notches in the electrodes V-shaped. These were in the end of the small electrode wires. Plaintiffs had never marketed any spark plugs with V-notches in the electrodes prior to the organization of the defendant company, nor until after it had placed such upon the market; that the cartons in which the plugs were presented to the public and sold were different in this: That the Hel-Fi was presented and sold in a red carton, the defendant's V-Ray in a blue carton; that the name ''Hel-Fi'' was stamped on plaintiff's spark plugs, and the name ''V-Ray'' stamped upon defendant's plugs. One was marked with a red devil; the other with a V, with a streak of lightning stamped on its respective plug. The ''V-Ray'' had a nickel-plated shell, the Hel-Fi a rough iron shell; a notched electrode on the V-Ray, none on the Hel-Fi; a smooth spacer on the Hel-Fi, a beveled cleaning cap on the V-Ray. On the V-Ray the electrode was bent at right angles to a center; on the Hel-Fi the electrodes paralleled the center electrode.

It appears that plaintiffs had not applied for a patent with V-notches in the electrodes at the time this suit was begun, and had never placed on the market any spark plug with V-notches in the electrodes. In other respects, the spark plug manufactured by the defendant, in size and form and general appearance, resembled the spark plug made by the plaintiffs. It is claimed, however, that the resemblance consisted only in those essential features of construction necessary to the construction of the article prepared for the market, and that no one has an exclusive right, even by use, to appropriate these to himself, and thereby acquire the sole right to the manufacture of the particular article. These do not constitute, in themselves, trade-marks, nor are they the subject of personal appropriation, nor does their use offend against the law of unfair business competition.

The disposition of this case does not involve the question

of trade-names or trade-marks, nor the rights which obtain to patented articles.

In the presentation of this case, the plaintiffs rely solely upon the rules heretofore laid down governing unfair business competition, and the determination of this case involves the application of these principles to the facts as we find them in this record.

What is unfair competition is a mixed question of law and fact, and has been variously defined and applied by the courts.  It consists in the conduct of a trade or business in such a manner that there is an expressed or implied representation that the goods or business of the one man are the goods and business of another (see 28 Am. & Eng. Encyc. 345 [2d Ed.]), and applies in cases where one simulates the particular device or symbol employed by another in such a way as to deceive the ordinarily prudent person, thereby leading him to believe, by the marks thus simulated, that the goods are the goods of another, and thus practicing a fraud upon the person whose goods he simulates, and upon the general public dealing in those goods.

1. UNFAIR COM-
PETITION : trade
marks and
names : fraud.

The ground of the action of unfair competition is fraud, and this may be shown by direct testimony, or by facts and circumstances or inferred from the manner in which the business is carried on.

This doctrine is applied in cases where one has established a business under a particular name, or by the use of certain marks or symbols, so that it has become known, in the trade, generally as designating the goods of that person.  Courts of equity will enjoin one who fraudulently assumes the same name, device, or symbol for the purpose of stealing away from the other the business so established, and thereby depriving him of the profit which flows from the business.  The object of the law is to protect the property rights of a person from invasion by one who fraudulently, by the use of the same devices, symbols, or name, ·

2. SAME : in-
junction.

seeks to and does take from him the custom, good will, and the business by him established and maintained. There is no practical way, other than by prohibition to prevent the filching of trade established by one in an article, through a name, symbol, or mark, than by prohibiting the use of the trade name or mark.

Even where the name, symbol, or device used is not one that can be protected as a trade name or mark, equity will protect one in the use of it, where it has, by long use, obtained a secondary meaning, as designating the goods of one particular person, and where, by the use of it, the public has come to know his goods by that name or symbol. He thereby acquires a property in it which is of value, and which another cannot wrongfully simulate and so deprive him of the benefits of its use. See *Sartor v. Schaden*, 125 Iowa, 696, in which it is said:

Aside from the law of trade-marks, courts will protect trade names or reputations, although not registered or properly selected as trade-marks, on the broad ground of enforcing justice and protecting one in the fruits of his toil. This is all bottomed on the principle of common business integrity, and proceeds on the theory that, while the primary and common use of a word or phrase may not be exclusively appropriated, there may be a secondary meaning or construction which will belong to the person who has developed it. In this secondary meaning there may be a property right.

To have this protection, the party complaining must show that, by continued use, the secondary meaning has become established in the public mind, and that his goods have become known and recognized by the public under the name, device, or symbol, with its secondary meaning. The secondary meaning only comes from use. Before the courts will afford protection in its use, it must be shown, that, as to the party complaining, it has a secondary meaning in the public mind; that it designates and is understood to represent the goods of the party complaining, so that one appropriating it and using

it, after such meaning had attached, would be in a position to practice a fraud upon the complainant and upon the public.

There is no general rule applicable to all these cases. Each case must depend upon its own peculiar facts. It must be borne in mind that courts, in the enforcement of this law, do not seek to strangle competition nor to foster monopoly, but lend their aid only to him who in good faith has adopted distinguishing marks or names to denote the origin of his goods, or adopted some peculiar way of distinguishing his goods, and it must appear that his goods have become known to the public by the distinguishing mark, and that business and trade in the goods, under the designation, has been acquired. Then it is that courts of equity will step in and prevent another from filching from him his business by simulating the name or mark thus adopted. Therefore it must appear, to entitle the party to relief, that the name, device, or symbol used by him has acquired a secondary meaning in the public mind, or with the trade, and that he has established a business under that name, mark, or symbol.

Every one has a right to manufacture spark plugs, except such as may be protected by patent, has a right to manufacture them in the way and in such manner, shape, or form as is essential to adapt them to the use and purposes for which they are intended. The necessary features of construction no one can appropriate to himself. No court would enjoin one from making use of features essential and necessary for the construction of the article, simply because they resembled or are the same as those formerly used by another. The adoption, by one manufacturer, of the essential features of another's product, where those features are common to articles of that class, does not of itself amount to unfair competition. See *Warren v. American*, 141 Fed. 513 (72 C. C. A. 571), or as held in *Rathbone v. Champion*, 189 Fed. 26 (110 C. C. A. 596, 37 L. R. A. (N. S.) 258): The rule of unfair competition cannot be successfully invoked to abridge the freedom of

3. SAME: trade marks and names: fraud: evidence.

trade competition, where the similarity complained of is with reference to necessary functional characteristics of the article simulated. These essential features enter into the composition of all articles of the same kind, and no one can acquire a personal or individual right to the same even by use.

The books are as full of cases as the human mind is full of invention. Efforts have been made to simulate the business of others and steal away the trade, and courts have responded to the call for protection. The whole doctrine is based upon the theory of protection to the person whose rights are invaded, as well as to the rights of the public. It rests upon unfair methods used to deprive another of rights acquired and business established. See *Fairbank Co. v. Lukel, King & Cake Soap Co.*, 102 Fed. 327 (42 C. C. A. 376), and *Sartor v. Schaden, supra.*

Applying these principles to the case at bar, we find that the defendant started in business in the manufacture of these spark plugs complained of shortly after the plaintiff had gone into business; that plaintiff had not established a business, and had not sold any spark plugs with V-notches in the electrodes; that the only point of resemblance of the two products was in the matter of essential construction common to all plugs; that the points of difference easily observable by the trade were exposed, and could easily be seen and recognized, by one desiring to make purchase as follows: Plaintiff called its spark plug ''Hel-Fi,'' and the regular mark was a red devil's head. Defendants called theirs ''V-Ray,'' and their regular mark was a V, with radiating streaks of lightning. Defendant sold theirs in a blue carton. Plaintiffs sold theirs in a red carton. The defendant used a nickel-plated shell, stamped with the name ''V-Ray.'' Plaintiff used a rough iron shell. The defendant used a spiral-beveled cap which served as a cleaner. Plaintiffs used a square shoulder cap used as a spacer. The defendants bent their electrodes converging inwardly towards the central electrode. Plaintiffs bent their electrodes to parallel the central electrode.

Defendants notched their electrodes with a V.   Plaintiffs did not.   The defendants stamped their trade-mark on the porcelain "V-Ray."   Plaintiffs stamped theirs "Hel-Fi."   There is no evidence that any one was deceived or that any confusion arose.

As said by the trial court in his opinion:

If plaintiff had been in business a number of years, and had gained for themselves an excellent reputation in the name -under which they were doing business, and had built up a good will, that would be one thing; but here are two companies entering into competition at practically the same time. The plaintiff takes the name 'Motor Accessory Manufacturing Company.'   That is descriptive of the business in which they are engaged.   The defendant has adopted the name 'the Marshalltown Motor Material Manufacturing Company.' That, too, is descriptive of the business.   There is no proof in this record that the plaintiff had built up a business under the name, so that the name became secondary, and, without such showing, it could not become exclusive.   However, even if it should be conceded that the names were similar, it does not afford evidence of a design to engage in unfair business competition for the reason that it appears that the defendant company advertised under the name of the 4 M. Company.

The plaintiff has sought to show that confusion arose in the business from the similarity in the names of the two corporations.   This, if it occurred at all, occurred in the early part of their business career, and the evidence offered such slight significance of confusion that we cannot trace it directly to the names or the manner of doing business, rather to the inadvertence or carelessness of the parties through whose act the confusion arose if any.

There are other complaints made, however, in the petition of which the evidence offers such slight proof that we do not consider them as a basis for the relief prayed for.

As said before, each case must be decided on its own peculiar facts, and a careful review of the record in this case

satisfies us that the judgment of the district court was right, and therefore is—*Affirmed.*

LADD, C. J., and DEEMER and WITHROW, JJ., concur.