CARL DARE, Appellant, v. FRANK FOY, Appellee.

REFORMATION OF INSTRUMENTS: Evidence—Weight and Sufficiency. Reformation of instruments is granted only when the evidence justifying such reformation is clear, satisfactory, conclusive, and practically beyond a reasonable doubt. Evidence held insufficient.

CONTRACTS: Legality of Object and Consideration—Restraint of Trade, Etc.—Inferential Restraint—Sale of Good Will. Permissible restraint on trade must be provided for by specific agreement—may not rest on inference only; therefore the simple sale of a business and the good will attending the same,

without more, does not preclude the seller from engaging in a *separate* and *independent* business of the *same kind*, and from soliciting the customers of the old business, especially at a point remote from the location of the business sold.

TRADE MARKS AND TRADE NAMES: Unfair Competition—Sale of Business—Continuance at New Location. The gist of "unfair competition" is that the guilty party is expressly or impliedly representing that his product is in fact the product of another; therefore, one who has sold his business, good will, catalogues, etc., employed therein, without restraint on his future activity in the same line of business, is not guilty of unfair competition by operating .in a new location a *separate, new,* and *independent* business, identical in nature with the one sold, and by operating said business by means, in part, of catalogues and circulars intentionally similar in design to those sold, especially when there was a time limit on the purchaser's right to use said catalogues, etc., and said time limit had expired.

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

MONDAY, SEPTEMBER 24, 1917.

SUIT in equity to reform and to compel specific performance of the terms of a written contract. The facts are stated in the opinion.—*Affirmed.*

*L. F. Sutton* and *O. M. Slaymaker,* for appellant.

*Wolfe & Wolfe* and *F. L. Holleran,* for appellee.

STEVENS, J.—I.   Prior to June 16, 1913, Frank Foy, appellee herein, was engaged at Des Moines in the business of raising, buying and selling chickens, ducks, geese, pigeons and poultry of all kinds for breeding purposes.   He also sold eggs and poultry remedies, incubators, et cetera.   He annually distributed a catalogue for the purpose of advertising his business, which was conducted under the name of "Frank Foy," and "Crescent Poultry Farm Co., Incorporated."   On the date above mentioned, he entered into a contract in writing with Carl

1. REFORMATION OF INSTRUMENTS: evidence: weight and sufficiency.

Dare, appellant herein, by the terms of which he sold the capital stock of the Crescent Poultry Farm Co., Incorporated, and all poultry, pigeons, poultry remedies, appliances, office fixtures, stationery, desks, other office furniture, files, baskets, coops, boxes, and other items of personal property used by him in the conduct of a mail order business. The contract further provided:

"The party of the first part further transfers and conveys to the party of the second part the good will of the business of the party of the first part, together with all catalogues, stationery and advertising matter, which said advertising matter may be continued as now run, for a period of not to exceed two years, at which time the business may be incorporated as 'F. Foy Co.,' the party of the second part to hold the party of the first part harmless by reason thereof."

In May, 1914, appellee moved to Lyons, Iowa, and in December of that year mailed a catalogue announcing his entrance into business at that place, under the name of "Frank Foy Poultry Co." February 4, 1915, appellant brought this suit, asking reformation of the written contract between the parties, and an order restraining the defendant from further using the name "Frank Foy" in his business, and from imitating plaintiff's catalogues and other advertising matter, and from acts of unfair competition, and prayed judgment for damages in the sum of $15,000, and general equitable relief. The court below dismissed the plaintiff's petition, and judgment was rendered against him for costs.

Reformation of the contract was sought upon the ground that, by oversight or mistake, there was omitted therefrom a provision previously agreed upon that appellee would not again engage in a similar business for a period of five years. The evidence justified an inference that, prior to the execution of the contract, both parties contem-

plated that a provision restricting appellee from entering into a similar business for five years should be included therein; but the evidence is very conflicting as to how the same came to be finally omitted therefrom. Appellee testified positively that he at no time consented to a provision in the contract limiting his right to again engage in business, but, on the contrary, claims that he at all·times refused to consent to such an arrangement.

It is unnecessary for us to set out or discuss the testimony in detail. To justify the reformation of a contract, it must be clear, satisfactory, conclusive, and practically beyond a reasonable doubt. *Beck v. Umshler,* 139 Iowa 378. No such showing was made in this case.

II. Appellant claims that the property 2. CONTRACTS: legality of object and consideration: restraint of trade, etc.: inferential restraint: sale of good will. actually turned over to him by appellee under the contract, for which he paid $5,500, outside of the good will of said business was not worth to exceed a few hundred dollars, and that the business was largely conducted by mail, and covered a large territory. For the purpose of advertising the business, it was the custom of appellee to issue and distribute, to prospective customers and to the public, catalogues, circulars and other advertising matter. These catalogues contained descriptive matter relative to the different varieties of poultry which he had for sale, and included colored cuts, pictures, symbols, et cetera, illustrative of the different breeds or varieties of birds and·poultry.

While at Des Moines, appellee bought and sold eggs and poultry in his own name and sometimes in the name of Mathew Mertz. After he moved to Lyons, Iowa, he began to advertise and carry on a business similar to that which he sold to appellant. Appellant claims that he adopted and used advertising matter, illustrations, catalogues, et cetera, in imitation of the catalogues and advertising mat-

ter previously circulated by him at Des Moines, and after he purchased appellee's business, good will, et cetera; and that he continued to buy eggs and poultry in the name of Mathew Mertz, and to advertise in his name in a Des Moines periodical, notwithstanding the fact that the said Mertz was at the time employed by appellant at Des Moines. The similarity between the advertising matter, and some of the contents and illustrations used by appellee in his catologue and on his circulars, tends strongly to indicate that he was seeking to thereby call attention to the fact that he had changed his business from Des Moines to Lyons, Iowa.

The definition of good will adopted by this court in *Millspaugh Laundry v. First National Bank,* 120 Iowa 1, is as follows:

"The advantage or benefit which is acquired by an establishment, beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position or common celebrity."

See also *Bradbury v. Wells,* 138 Iowa 673.

Definitions similar to the foregoing are adopted and applied in the following cases: *Kennebec Water District v. City of Waterville,* (Me.) 54 Atl. 6; *Didlake v. Roden Grocery Co.,* (Ala.) 49 So. 384; *Bloom v. Home Ins. Agency,* (Ark.) 121 S. W. 293; *Brown v. Benzinger,* (Md.) 84 Atl. 79; *Haugen v. Sundseth,* (Minn.) 118 N. W. 666; *See v. Heppenheimer,* (N. J.) 61 Atl. 843; *White v. Trowbridge,* (Pa.) 64 Atl. 862; *Consolidated Gas Co. v. City of New York,* 157 Fed. 849; *Prescott v. Bidwell,* (S. D.) 99 N. W. 93, 94; *Lindemann v. Rusk,* (Wis.) 104 N. W. 119; *Gordon v. Knott,* (Mass.) 85 N. E. 184; *Cottrell v. Babcock Printing-Press Mfg. Co.,* (Conn.) 6 Atl. 791; *Williams v. Farrand,* (Mich.) 50 N. W. 446; *Ranft v. Reimers,* (Ill.) 65 N. E. 720.

In *Cottrell v. Babcock Printing Co.,* supra, the Supreme Court of Connecticut said:

"By purchasing the good will merely, Cottrell secured the right to conduct the old business at the old stand, with the probability in his favor that old customers would continue to go there. If he desired more, he should have secured it by positive agreement. The matter of good will was in his mind. * * * At any rate, the express contract is the measure of his right; and, since that conveys a good will in terms, but says no more, the court will not, upon inference, deny to the vendor the possibility of successful competition, by all lawful means, with the vendee in the same business. No restraint upon trade may rest upon inference. Therefore, in the absence of any express stipulation to the contrary, Babcock might lawfully establish a similar business at the next door, and, by advertisement, circular, card, and personal solicitation, invite all the world, including the old customers of Cottrell & Babcock, to come there and purchase of him, being very careful always, when addressing individuals or the public, either through the eye or the ear, not to lead anyone to believe that the presses which he offered for sale were manufactured by the plaintiffs, or that he was the successor of the firm of Cottrell & Babcock, or that Cottrell was not carrying on the business formerly conducted by that firm. That he may do this by advertisements and general circulars, courts are substantially agreed, we think. But some have drawn the line here, and barred personal solicitation. They permit the vendor of a good will to establish a like business at the next door, and, by the potential instrumentalities of the newspaper and general circulars, ask the old customers to buy at the new place, and withhold from him only the instrumentality of highest power, namely, personal solicitation. * * * Other courts have been of the opinion that no legal principle can be made to rest upon

this distinction; that to deny the vendor personal access to old customers even would put him at such disadvantage in competition as to endanger his success; that they ought not, upon inference, to bar him from trade either totally or partially; and that all restraint of that nature must come from his positive agreement. And such, we think, is the present tendency of the law."

We quote also from *Fish Bros. Wagon Co. v. La Belle Wagon Works,* (Wis.) 52 N. W. 595:

"Notwithstanding the good will of an established and successful business may be sold in connection with the property and assets, so as to entitle the purchaser thereof to a certain limited protection, yet such transfer will not of itself alone be sufficient to preclude the seller from engaging in a separate and independent business of the same kind, and to solicit the customers of the old business, even in the same city or village, much less in a city or village 200 miles or more distant."

Applying the foregoing authorities to the evidence in this case, it is our opinion that the contract should not be construed or applied so as to restrain appellee from engaging in a similar business in a city more than 200 miles distant from Des Moines. He did not, by the contract, agree not to engage in business again in Des Moines or elsewhere, though probably, as an inducement to make the contract, he led appellant to so believe; but that is of no avail in this case.

3. TRADE MARKS AND TRADE NAMES: unfair competition: sale of business: continuance of new location.     III. Appellant charges appellee with unfair competition, also. The basis of this charge is the alleged attempts of appellee to circulate and distribute catalogues so similar in shape, size, cover design, and general arrangement and appearance, to those formerly issued by him as to deceive his former customers and the public generally.

It is claimed that the illustrations of the fowls advertised in his catalogue are similar to or identical in color, variety, grouping and descriptions with those used by appellant. On the other hand, appellee maintains that the illustrations used by him are of a stock variety, and that they were purchased by him of a publisher selling the same to anyone desiring to buy.

It is quite apparent from the evidence that appellee has sought, in a measure, to give the catalogues and advertising matter circulated by him the same general appearance as the catalogues and advertising matter formerly issued by him and sold to appellant. The similarity of the arrangement, the illustrations, et cetera, are well calculated to call the attention of his former customers thereto. It does not appear from the evidence, however, that he has made any effort, by advertising, correspondence or personal solicitation, to induce his former trade to believe that he is conducting the same business at the same place, or that he has removed it therefrom to Lyons, Iowa. His stationery and advertising matter all apparently show correctly his place of business; but in some of it, he styles himself as "The Original Frank Foy." As above stated, much of the business of appellant is done by mail, and his catalogues and advertising matter are widely distributed throughout the country.

Appellant apparently proceeds on the theory that he is entitled to the exclusive use of the advertising matter purchased by him of appellee, and that any attempt on the part of the latter to simulate the same is a violation of the contract under which he purchased the business at Des Moines. Of necessity, persons advertising the breeding and raising of identical birds and varieties of fowls would, if they undertook to use colored illustrations, to some extent imitate the advertising matter of each other. Appellee conveyed to appellant "all catalogues, stationery and advertising matter, which said advertising may be continued as now

run for a period of not to exceed two years, at which time the business may be incorporated as 'F. Foy Co.' " The two-year limitation expired before this case was tried below. By implication at least, the exclusive right of appellant, if such were intended by the terms of the contract, expired at the end of two years after its execution. *Hanna v. Andrews,* 50 Iowa 462. It may be that appellant understood that he was buying the advertising matter and business of appellee in consideration, in part at least, of appellee's agreement not to again engage in a like business; but, as no such provision appears in the contract, and same cannot be reformed, under the evidence before us, to so provide, we must be guided by the provisions thereof, as executed.

Unfair business competition may consist of the adoption, imitation or simulation of the advertising matter or symbols used by another in such a way as to mislead the customers of a competitor and the public into believing that the goods offered by him for sale are the goods of another. In *Motor Accessories Mfg. Co. v. Marshalltown M. M. Mfg. Co.,* 167 Iowa 202, we said:

"It consists in the conduct of a trade or business in such a manner that there is an expressed or implied representation that the goods or business of the one man are the goods or business of another, * * * and applies in cases where one simulates the particular device or symbol employed by another in such a way as to deceive the ordinarily prudent person, thereby leading him to believe, by the marks thus simulated, that the goods are the goods of another, and thus practicing a fraud upon the person whose goods he simulates, and upon the general public dealing in those goods."

Also, in *Sartor v. Schaden,* 125 Iowa 696, we further said:

"[The action] is all bottomed on the principle of com-

mon business integrity, and proceeds on the theory that, while the primary and common use of a word or phrase may not be exclusively appropriated, there may be a secondary meaning or construction which will belong to the person who has developed it. In this secondary meaning there may be a property right."

While the similarity in the appearance of the catalogues and other advertising matter issued by appellee to those used by appellant is well calculated to attract the attention of former patrons of appellee, and to identify him with the person formerly in the same business at Des Moines, yet he does not pretend to be conducting the same business nor to be in any way connected therewith. The catalogues and advertising matter used by appellant were purchased of appellee for use for a limited period, and that time has expired. The advertising matter, catalogues, et cetera, sold by appellee to plaintff were of appellee's original production, and the use thereof by appellant was, by the terms of the contract, for a period of not to exceed two years.

IV. It appears from the evidence that appellee engaged in business at Lyons, Iowa, and put out the catalogues complained of within two years after the execution of the contract. Appellant claims damages in the sum of $15,000, but the trial court rightly found that the evidence offered did not furnish the necessary data for determining the amount of damages, if any. Without expressing an opinion upon the merits, or upon appellant's right to damages, we refrain from passing upon this question, and leave plaintiff to pursue any remedy which he may have against appellee therefor.

For the reasons pointed out, the decree and judgment of the lower court are—*Affirmed*.

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.