**SAPERSTEIN v. GRUND.**

Civ. No. 864.

United States District Court
S. D. Iowa, C. D.

June 29, 1949.

Allan R. Bloch, Chicago, Ill., Talbert Dick, Morton S. Adler, Des Moines, Iowa, for plaintiff.

Irvin Schlesinger, John Connolly, III, Des Moines, Iowa, for defendant.

DEWEY, District Judge.

The above entitled action was tried on its merits at Des Moines, Iowa, and submitted to this court for decision.

Plaintiff in the early part of 1928 organized a colored basketball team which was first designated as the "New York Harlem Globetrotters," but later was called the "Harlem Globetrotters", and at all times since has carried that name. Plaintiff has at all times been the owner of the team and has equipped it with a distinctive uniform which he has endeavored consistently to maintain.

It was organized as a professional colored basketball team and soon thereafter and at all times since has been considered a championship team. It developed and became identified with a style of play, marked with comic antics by the players which became very popular with the sport fans, at first locally and afterwards nationally.

The Globetrotters organization has grown until it engages in many different sport activities, such as in baseball, with a team which also carries the name "Harlem Globetrotters."

The organization has a regular training camp and has spent large sums of money in developing the organized athletic groups with very successful financial results. The basketball team or teams under the name of "Harlem Globetrotters" have played in many of the states of the Union as well as in Canada and Mexico and possibly in other foreign countries.

About the year 1935 a basketball team, either owned or formerly owned by the plaintiff, disbanded at Des Moines, Iowa, and at that time was playing under the title of the "Famous Globetrotters." The uniforms of these players were demanded and recovered by the plaintiff but the team continued to function and was afterwards taken over by the defendant, and at all times since has played under the name of the "Famous Globetrotters," with headquarters at Des Moines, Iowa.

During the War both teams were inactive, but thereafter each team has been very successful and the defendant's team began to play basketball games outside of the State of Iowa and even in the foreign countries which had been or were being played in by the plaintiff's organization.

Since the War the defendant's team has not only come into competition with the plaintiff's teams but, by reason of the designation of "Famous Globetrotters", has created some confusion among sport writers and basketball fans as to the two organizations.

Plaintiff has brought suit in this court alleging a claimed piracy of the name of "Harlem Globetrotters" by the defendant, and he asks in his petition in this court for damages and also for an injunction to restrain the defendant from the use of the name "Globetrotters" that has caused confusion; but, during the trial and in the arguments, the plaintiff disclaims any desire to recover damages.

The evidence is extensive and no benefit would be attained by going into it in detail, but some facts stand out prominently. One is the success of the efforts on the part of the plaintiff in forming and promoting his Harlem Globetrotters into a very successful financial organization; in the studied clowning and entertainment of the club; and its ability to win games as a professional basketball team.

A second outstanding fact is the use of the name "Famous Globetrotters" when there existed a much more famous Globetrotters organization. This would tend to confuse the sports fans as to whether the defendant's team or the plaintiff's teams were in fact that famous Harlem Globetrotters team.

The third fact that stands out is that the defendant not only used the word "Famous" in describing his basketball team, but also used the word "Original" in his advertisements and on his letterheads, thereby also tending to create confusion between his team and the team of the plaintiff known as the "Harlem Globetrotters."

Defendant claims in his argument that the plaintiff can not recover because the words "Harlem Globetrotters" have not acquired a secondary meaning that entitled

him to protection; that the name "Famous Globetrotters" is so distinct as not to be confused with "Harlem Globetrotters"; that the plaintiff has known of the defendant's organization since 1935 and has not taken any formal action to prevent the use of the name, but has permitted the defendant to spend a large amount of money in playing his team under that name, and has acquiesced in the name for such a length of time that the plaintiff is now barred by estoppel and laches from obtaining the relief demanded.

Defendant also claims that the plaintiff does not come into court with clean hands and is therefore not entitled to relief.

Defendant also claims that under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the laws of the State of Iowa prevail.

█ It does appear from the recent decisions of the United States Supreme Court and the trend of the decisions that this case is controlled by the laws of the State of Iowa. But I find the laws of the State of Iowa in harmony with the general rules regarding claimed piracy of trade names and unfair competition.

█ In Sartor v. Schaden, 125 Iowa 696, 700, 101 N.W. 511, 513, is the statement: "Courts will protect trade-names or reputations, although not registered or properly selected as trade-marks, on the broad ground of enforcing justice and protecting one in the fruits of his toil. This is all bottomed on the principle of common business integrity, and proceeds on the theory that, while the primary and common use of a word or phrase may not be exclusively appropriated, there may be a secondary meaning or construction which will belong to the person who has developed it. In this secondary meaning there may be a property right."

And that court continued, on page 701 of 125 Iowa, on page 513 of 101 N.W.: "* * * if it appear that such confusion has been or is likely to be produced, that there have been actual sales of one product for the other, that there have been actual mistakes of one or the other, or if there be such similarity of the two brands as that one may readily be mistaken for the other, as case is made out."

And further at page 702 of 125 Iowa, at page 513 of 101 N.W., is the statement: "The use of the word in other states or in other parts of this state by persons who did not compete with plaintiff is not controlling on the issue of unfair competition. There cannot be unfair trade unless there be competition, and in many cases, if not in most, this competition is of necessity local."

These principles of law were later confirmed by the cases of Motor Accessories Mfg. Co. v. Marshalltown Motor Material Mfg. Co., 167 Iowa 202, 149 N.W. 184; Atlas Assurance Company v. Atlas Ins. Co., 138 Iowa 228, 112 N.W. 232, 114 N.W. 609, 15 L.R.A., N.S., 625, 128 Am.St.Rep. 189; Dyment v. Lewis, 144 Iowa 509, 123 N.W. 244, 26 L.R.A., N.S., 73; and Lennox Furnace Co. v. Wrot Iron Heater Co., 181 Iowa 1331, 160 N.W. 356, 165 N.W. 395. These cases state generally the law as I understand it controlling the issues here.

[5] Defendant contends that as the plaintiff has made no objections to the use of the term "Famous Globetrotters" and has permitted the defendant to expend large sums of money in developing his team under that name, that he should now be estopped from a recovery in this suit and is guilty of laches. However, the evidence establishes that the competition did not amount to very much until after the War and this would be too short a time to hold the plaintiff guilty of laches.

If the defendant spent money in developing his team under the name of "Famous Globetrotters" it was with knowledge on his part that he was simulating the name of plaintiff's team.

The defendant had a right to use all of his resources in developing a team similar to that of the Globetrotters. Plaintiff did not have a monopoly on professional basketball teams or on comic antics of the players. The error of the defendant was in continuing the use of a similar name after the clubs came into competition and in

permitting the use of advertising that tended to mislead the public in believing that his team was that belonging to the plaintiff's organization.

■■ "Globetrotters" is a generic word that is not subject to a trade mark name in and of itself, but its use and development by the plaintiff's team under that name gave it a secondary meaning to the public and they were under the belief that the "Globetrotters" had to do with a sports organization owned, developed and managed by the plaintiff. The use of the word "Globetrotters" therefore in designating the defendant's team tended to deceive the public.

■ I find nothing that would indicate any fraud on the part of the plaintiff that would smear him with a charge of fraud and prevent him coming into a court of equity in this case.

■ Defendant by an amendment to his answer asks that he be permitted in any event to use the name "Globetrotters" with some descriptive words that would clearly indicate a different team from that of the plaintiff's organization. However, the evidence discloses that the defendant has permitted by the use of the names "Famous" and "Original" the fans and sports writers to become confused and plaintiff is entitled to his injunction as against the defendant from the defendant's use of the word "Globetrotters" in designating his team. If the defendant had used some designation such as that now suggested by him it might have saved him this lawsuit.

I therefore make the following

### Findings of Fact.

1st. That plaintiff's organization has become known under the name of "Harlem Globetrotters" since 1928 and has attained a national reputation both as an outstanding professional colored basketball team, and as an organization with a peculiar style of play which has been very successful in the sports world among basketball fans.

2nd. That by reason of the style of play and prominence of the organization, the name "Harlem Globetrotters" has had a secondary meaning that has coupled it with the organization of the plaintiff operating out of Chicago and the name "Globetrotters" has become associated with this organization both in this State and nationally.

3d. Defendant's organization has existed since the year 1935 and has been operating under the name of "Famous Globetrotters" and since the late war has been successful as a colored organization using the style of play and the comic antics of plaintiff's teams.

4th. That defendant's encroachment on plaintiff's organization has been gradual and progressive. It did not come into competition or create confusion with the plaintiff's teams until after the late war. The plaintiff took this action when it appeared that the defendant's team was coming into competition with his organization and the public was being confused as to the two organizations.

5th. That the use of the name "Famous Globetrotters" and "Original Globetrotters" indicates a purpose and intent on the part of the defendant to make the basketball fans believe that defendant's organization was the famous and original colored organization putting on the type of play that had been originated and made famous by plaintiff's "Harlem Globetrotters".

6th. That the evidence does not establish that the plaintiff has been guilty of any unlawful acts that would prevent him coming into this court as a court of equity with clean hands.

### Conclusions of Law

1. That plaintiff has not been guilty of laches in the institution of this suit and is not estopped from maintaining this action.

2. That defendant has either intentionally or carelessly permitted the name of his team to give a false impression and to cause confusion between his team and those of the plaintiff among sports writers and basketball fans of the United States.

3. Plaintiff is entitled to an injunction as demanded by him in his petition; but in denying to defendant the use of the name "Globetrotters" the defendant should be permitted to use any other word that

can in no way deceive or mislead. Defendant, can use any term other than "Globetrotters" in designating his basketball team that will clearly and unmistakably show that his organization is entirely separate and distinct from the plaintiff's organization. See Atlas Assurance Co. v. Atlas Ins. Co., 138 Iowa 228, 235, 112 N.W. 232, 114 N.W. 609, 15 L.R.A., N.S., 625, 128 Am.St.Rep. 189.

4. Plaintiff is entitled to recover the costs against the defendant.

The attorneys for the plaintiff may prepare a decree in conformity with these findings of fact and conclusions of law. To each and every finding of fact and conclusion of law the defendant excepts.