### CITY OF CARLSBAD et al. v. KUTNOW et al.

(Circuit Court of Appeals, Second Circuit. December 2, 1895.)

1. TRADE-MARKS AND TRADE-NAMES — INFRINGEMENT — "CARLSBAD SPRUDEL SALTS."

The city of Carlsbad, Bohemia, having long made and sold salts of high medicinal qualities, in crystals and powders, made by evaporating water from the springs owned by that city, under the name of "Carlsbad Sprudel Salts," *held*, that it was an infringement to sell articles of salts in no way derived from the Carlsbad waters under the name of "Improved Effervescent Carlsbad Powder," it appearing that the city of Carlsbad had not used the name upon any but genuine salts derived from the spring waters, and there being no evidence that it had authorized or acquiesced in such use by any other person. 68 Fed. 794, affirmed.

2. SAME.

The fact that the city of Carlsbad sells "Carlsbad Sprudel Lozenges," with labels stating that they are "manufactured under the own administration of the city of Carlsbad," and which contain but 10 per cent. of the ingredients found in Carlsbad water, and 90 per cent. of cane sugar, constitutes no fraud or misrepresentation such as would warrant a contention that the city does not come into court with clean hands; for lozenges, by dictionary definition, are small cakes of sugar or confection, often medicated.

3. SAME—EVIDENCE IN INFRINGEMENT SUITS—GRANT OF TRADE-MARK BY FOREIGN GOVERNMENT.

A decision of the high court of chancery in England, granting to defendant, against complainant's opposition, the right to register as a trade-mark the words alleged to be an infringement, and the affidavits upon which such decision was made, are irrelevant and inadmissible in an infringement suit in this country. 68 Fed. 794, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a bill in equity by the city of Carlsbad and others against Hermann Kutnow and others, composing the firm of Kutnow Bros.,

for an alleged infringement of the trade-mark or trade-name "Carls-bad. Sprudel Salts."

The appeal is from an interlocutory decree of the circuit court, Southern district of New York, enjoining the defendants from using the name "Improved Effervescent Carlsbad Powder," and the name "Improved Carlsbad," or the name "Carlsbad," to designate the preparation heretofore used and sold by them, and from using said names to designate any preparation, compound, or article substantially the same as the preparation heretofore sold by them, and from using or applying in commerce the name "Carlsbad" with or to any preparation or compound not a genuine Carlsbad product, so as to represent that such preparation or compound is genuine Carlsbad salts or powder, or which is liable to cause said preparation or compound of the defendants to be known in the market as genuine Carlsbad salts or powder.

A. v. Briesen, for appellants.

Chas. G. Coe, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The circuit court found: That the complainant the city of Carlsbad is now, and has been for many years, the sole and exclusive owner of the mineral springs situated at the city of Carlsbad, the waters of which have been known and celebrated for many years for their peculiar and characteristic healing, medicinal, and curative qualities; and that said city is also, and has been for many years, the sole and exclusive owner of the lands on which said springs are located. That many years ago the said city of Carlsbad began to evaporate and prepare the waters of the Carlsbad Sprudel Spring—one of the said mineral springs—into a crystalline salt, and to sell the same by and under the name and designation of "Karlsbader Sprudel Salz," or, in anglicized form, "Carlsbad Sprudel Salts," and continued to so prepare, call, mark, and sell the said salts until in or about the year 1882, when the said city commenced also to prepare the salts evaporated from the genuine waters of said spring in a powdered form, and to sell the same thereafter; and in or about the year 1887 the said city, in order to further distinguish and identify said salts in each of said forms so prepared, commenced to call, mark, and sell the said salts in distinctive boxes or packages and distinctive bottles in their crystalline form, under the name of "Carlsbad Sprudel Salt (Crystal)," and in their powdered form under the name of "Carlsbad Sprudel Salt (Powder Form)." That prior to January 1, 1887, the city of Carlsbad gave by contract to the complainant named and set forth in the bill as trading and doing business in Carlsbad as Loebel Schottlander, for the term of 15 years, the sole and exclusive right to sell the products of the Carlsbad Springs, including the said salts in their crystallized and powdered form; and that said firm of Loebel Schottlander, on or about January 1, 1887, gave by contract to the complainant the Eisner & Mendelson Company the sole and exclusive right to sell said product in the United States. That the last-named complainant has expended large sums of money in advertising the said Carlsbad waters and products, and in popularizing them, and extending their sale throughout the United States; and that the said Carlsbad

salts have become widely and favorably known throughout the United States by and under the generic name and designation of "Carlsbad Sprudel Salts," and the specific terms of "Carlsbad Sprudel Salts (Crystal)" and "Carlsbad Sprudel Salts (Powder Form)." These findings are sustained by proof, and to none of them have defendants assigned error.

The circuit court further found that in short trade phrase and abbreviated and popular form the salts are known here as the "Carlsbad Crystal" and "Carlsbad Powder." There is sufficient proof to sustain such findings, and no substantial conflict of evidence on that point. Both crystal and powder are wholly natural compounds, with no artificial admixture. Their chemical ingredients come from the Sprudel Springs, and from nowhere else. Under the older process of evaporation, by which the crystal is produced, some of the soluble constituents of the Carlsbad water are apparently not retained, and the product liquifies at about 90° F. The powder contains all the soluble constituents of the water, and is easily kept in any climate. It is prepared by a more elaborate process of evaporation, which includes the introduction of carbonic acid gas, but that gas is not artificially prepared; it is taken from the spring itself. The Carlsbad Sprudel Salts in either form, therefore, is a natural product, and well known as such; and there is no proof in the case that the complainants have used the name Carlsbad upon any but genuine Carlsbad Sprudel Salts. And we concur with the circuit judge in the finding that there is no evidence in the record that any artificial salts have from similarity or otherwise come to be known by the name of Carlsbad, as is the case with the Epsom salts, a term now generally applied to sulphate of magnesia, whether such sulphate of magnesia comes from Epsom or not. Under these circumstances the complainant the city of Carlsbad has the right to indicate the origin of these natural salts by its own name, and would be entitled to the aid of a court of equity to prevent any one from using that name to induce the public to accept as genuine artificial salts not the product of the Carlsbad Spring. The complainants proved the sale by defendants of a preparation designated on the package by the term, "Kutnow's Improved Effervescent Carlsbad Powder." A qualified expert chemist analyzed the contents of the package. He also analyzed the contents of a bottle of the genuine Carlsbad powder. The results of such analysis are:

| *Genuine Carlsbad.* | | *Defendants' Package.* | |
|---|---|---|---|
| Sulphate of potassium | 3.85% | | |
| Sulphate of sodium | 41.62 | Sulphate of sodium | 9.53% |
| Carbonate of sodium | 3.16 | | |
| Bicarbonate of sodium | 31.08 | Bicarbonate of sodium | 27.36 |
| Chloride of sodium | 18.19 | Chloride of sodium | 2.59 |
| Bicarbonate of lithion | 0.24 | | |
| | | Rochelle salts | 41.2 |
| | | Free tartaric acid | 15.27 |
| Water | 1.86 | Water | 3.7 |

The witness further testified that the two compounds are entirely different in their chemical composition, and that the alkalinity, which it appears is a distinguishing characteristic of all products

of the Carlsbad Springs, water and salts alike, is very much reduced in the defendants' compound; the respective alkalinity of the two being represented, respectively, by 23.3 per cent. and 5.12 per cent. These comparative analyses are criticised by the defendants because the sample of genuine salts used by the witness was Carlsbad powder, and not Carlsbad crystal. The preparation which defendants sell, however, is described as "Kutnow's Improved Effervescent Carlsbad Powder," a phrase which is calculated to suggest that it is Carlsbad powder which has been "improved" and made effervescent by Kutnow; and a comparison of defendants' compound with the genuine powder was, therefore, a fair one. From his analyses the witness was able to state that defendants' preparation did not contain Carlsbad powder. Carlsbad crystals, however, it will be remembered, lack some of the natural mineral constituents which Carlsbad powder contains. The witness, therefore, on cross-examination, admitted that it was possible that defendants' compound might contain some salts gained by evaporation from natural Carlsbad spring water. He was positive, however, in the assertion that 80 per cent. of the compound was artificial, that it contained no Carlsbad powder, and that in the distinguishing characteristics of alkalinity it was a very different substance from genuine Carlsbad salts of either form. It is, according to the uncontradicted testimony, substantially a Seidlitz powder, with salts added, since the constituents of Seidlitz powder are bicarbonate of soda, Rochelle salts, and tartaric acid in about the proportions indicated in the analysis; and Kutnow's preparation contains 85 per cent. of those constituents, while the genuine Carlsbad salts contain neither Rochelle salts nor tartaric acid. Upon rebuttal, complainants called a medical practitioner of large experience with Carlsbad products, who testified that the therapeutic effect of a preparation like Kutnow's would be constitutionally different from that of the Carlsbad products. Without this rebuttal testimony, however, complainants had made out a prima facie case when they showed that the preparation which defendants sold was an artificial compound, in which it was doubtful whether any salt obtained from the Carlsbad Springs was present at all, and which contained none of the Carlsbad powder upon which it was advertised to be an improvement. The defendants thereupon proceeded with their defense. S. Kutnow, who makes the preparation which defendants sell, is their brother, but not connected with them in business, except so far as they buy from him the packages of his powder which they sell. He is senior partner in the firm which manufactures the powder in England, and there is no pretense that it contains any genuine Carlsbad powder. It is contended, however, that Carlsbad natural salt, not in the powder form, is used in its preparation to a substantial extent, sufficient to entitle defendants to claim that it is in fact Carlsbad salt, improved by the introduction of other ingredients. Two opinions were filed by the circuit judge, one upon final hearing (68 Fed. 794), and one upon an application for a rehearing. In the former he says:

"If defendants procured genuine Carlsbad waters or salts, and put them up in different forms, or with other ingredients to improve their taste, or vary their effects, these words ["Improved Effervescent Carlsbad Powder"] would be truthful, and they would seem to have a clear right to use them in such preparations."

And in the opinion filed upon rehearing he says that "the case might be opened to admit such evidence," viz. that defendants' powder contains genuine Carlsbad products. The defendants, however, have scrupulously refrained from calling either Kutnow, the manufacturer, or any one in his employ having knowledge of the fact, to prove, not the formula, which is a trade secret he may not wish to disclose, but even the single fact that any Carlsbad products at all are used in the preparation of his powder, and, if so, to what extent. This failure to produce any competent proof on the important point in the case is most suggestive. It is true, defendants are sellers only, not manufacturers; but the manufacturer in London has a common interest with them in the continuance and increase of such sales, and, if his preparation contains sufficient genuine Carlsbad products to justify the use of the name he gives it, it is inconceivable that he would be unwilling to furnish proof of that fact. Upon the whole record it is difficult to escape the conviction that the Kutnow preparation now before the court contains no natural Carlsbad water or salts at all. The defendant Hermann Kutnow testifies that he "believed" the preparation contained Carlsbad Sprudel Salt in crystals, because he had been so informed by S. Kurnow & Co. This evidence was promptly objected to as incompetent and hearsay, and it is difficult to understand upon what theory defendants' counsel offered it. This witness also testified to the beneficial operation of the Kutnow powder. But, conceding it to be a valuable addition to the pharmacopœia, that fact is immaterial. Complainants object to it, not because of any alleged worthlessness, but because it is represented to be, in part at least, a genuine Carlsbad product.

Defendants next put in evidence the record of certain proceedings in England. Registration of their trade-mark was there applied for by S. Kutnow & Co. It was opposed by the English agents of the city of Carlsbad, was granted by the registrar, an appeal taken to the high court of justice, chancery division, and the action of the registrar sustained by Mr. Justice North. The record consists of the decisions of the registrar and of Mr. Justice North, and of various affidavits made in 1891. Early in the case a stipulation was made by complainants' counsel that he would "admit correct and true copies of any papers that defendants' counsel wishes to introduce with reference to the Kutnow trade-mark litigation in England without requiring the production or proof of the original documents, but without waiving his objection on other grounds to the relevancy and materiality of such papers"; and when the record was offered, complainants' counsel objected to it as irrelevant and immaterial, whereupon it was injected bodily into the case. It covers 80 printed pages. The circuit court has pointed out the unsatisfactory character of such testimony where the witnesses have been neither

examined nor cross-examined, and correctly holds that "nothing short of an express stipulation to that full effect would make testimony taken in one case proof of facts in another." The English record moreover, was obnoxious to another and fatal objection. The most cursory inspection of it shows that the powder before the registrar and the court in that proceeding was made by one Worlicek, a chemist in Carlsbad, according to a formula given him by Kutnow, and contained at least 15 per cent. of genuine Carlsbad Sprudel Salt, obtained in Carlsbad by Worlicek from Loebel Schottlander, the local concessionaire of the city of Carlsbad. The completed compound, packed in tins, was shipped by the Carlsbad chemist to Kutnow in London, who there repacked it in cartons. When it is remembered that the powder in the case at bar is concededly manufactured, not in Carlsbad, but by Kutnow himself in England, and that there is not a scintilla of evidence to show that the formula used is the same, it is manifest that the English record is irrelevant and immaterial. This court has already reprehended the practice which prevails in equity causes of stuffing the record with irrelevant testimony. Ecaubert v. Appleton, 15 C. C. A. 13, 67 Fed. 917. Undoubtedly, the circumstances under which the evidence in such causes is taken—before an examiner who has no power to exclude anything—tend to produce such slipshod and unscientific records as are frequently presented to the court; but counsel certainly owe it to themselves, their clients, and the court not to conduct the trial of an equity cause as if the most elementary rules of evidence were suspended. It has been suggested that the English record contains statements by the complainant the city of Carlsbad, or its agents, which were admissible as "admissions against interest." If this be so, counsel should have separately offered each of such admissions, or at most the particular affidavit or letter in which it is contended that they appeared. Moreover, by no stretch of the imagination can it be conceived that the affidavits presented by Kutnow himself in that proceeding, or the opinions of the registrar or of Mr. Justice North, contained any "admissions by the city of Carlsbad." The appellants' counsel states generally in his brief that "in the depositions of the officers of the city of Carlsbad and of the witnesses called by it in the London proceeding" will be found evidence of "its knowledge of and acquiescence in the use of artificial Carlsbad salts, and its acquiescence in the use of names for preparations exactly like that of defendants in which 'Carlsbad' forms a part of the name." Unfortunately, the brief contains no reference to the folio where this important evidence is to be found. A careful examination has, however, been made of the entire English record. The only depositions of witnesses called by the city of Carlsbad which it contains are an affidavit of Zerkendorfer, the burgomaster, signed, but apparently not sworn to, and an examination of the same officer, taken in Carlsbad, November 7, 1891. No admissions of the kind referred to are found therein, the witness stating that as soon as he, the burgomaster, found that Worlicek was making the compound in question in Carlsbad, and

shipping it to Kutnow in London, he compelled Worlicek to discontinue making any further preparations. The entire English record is therefore irrelevant and immaterial, and should be eliminated from the case.

Defendants put in evidence as an exhibit a box of powders put up in small packages like Seidlitz powders, and known as "Lippman's Carlsbad Effervescing Powders." An analysis of these, made by defendants' expert, showed that they have substantially the same composition as those sold by the defendants. It is contended that these are made with the license or consent of the city of Carlsbad, and that, therefore, complainants have acquiesced in the application of the name "Carlsbad" to a preparation like defendants' own. There is, however, no evidence of any such license or consent. Eisner, an officer of the Eisner & Mendelsohn Company, complainant, testified that he had in his possession a declaration by Lippman, apparently in the form of a letter or circular, that he held a revocable license from the city of Carlsbad, but such declaration was never produced, and, if it had been, it is somewhat difficult to see on what ground it could be held competent evidence of the fact that such license had been given him. A circular accompanying Lippman's powders was put in evidence, but it contains no statement that his powders are prepared under any such license. It also appears that the city of Carlsbad sells "Carlsbad Sprudel Lozenges," which are stated on the packages containing them to be "manufactured under the own administration of the city of Carlsbad," and which contain 10 per cent. of the ingredients which are found in Carlsbad water and 90 per cent of cane sugar. We fail to find in this circumstance any such fraud or misrepresentation as would warrant defendants' contention that the complainants do not come into court with clean hands. The Century Dictionary defines a lozenge to be "a small cake of sugar or confection, often medicated." The Carlsbad Sprudel Lozenges of the complainants are therefore just what they are represented to be, viz. small cakes of sugar, medicated with genuine Carlsbad Sprudel Salts.

The decree of the circuit court is affirmed, with costs.