### COALGATE ABSTRACT CO. et al. v. COAL COUNTY ABSTRACT CO.

No. 26295. March 30, 1937.

Rehearing Denied April 20, 1937.

G. C. Abernathy, Edward Howell, and Kenneth Abernathy, for plaintiffs in error.

E. Moore, for defendant in error.

PER CURIAM. T. P. Crim had been doing an abstract business in Coalgate, Coal county, under the name the Coal County Abstract Company, for 17 years. This name had been used by him and his predecessors since 1907, a period of approximately 28 years. In the year 1935, Martin Deister and Ernest Ward, who had theretofore owned and operated the Lewis Pottawatomie County Abstract Company, at Shawnee and Tecumseh, Okla., followed the oil business into Coal county and opened an abstract office in Coalgate under the name of the Coalgate Abstract Company. The plaintiff below sought to enjoin the use of the name the Coalgate Abstract Company in the abstract business, on the ground that it constituted unfair competition because of a similarity in names between the Coalgate Abstract Company and the Coal County Abstract Company, plaintiff's contention being the usual one that the name was calculated to deceive and confuse the public and cause the plaintiff to lose its customers to the defendant.

It is needless to say that the law of trademarks, trade-names and unfair competition is considerably confused. It is difficult at times to reconcile and harmonize the decisions. We realize that there is some slight similarity in the two names. In cases of this sort, courts must be careful to protect the legitimate rights of the original users and at the same time give perfect freedom to a secondary user, if his claims are within the proper bounds.

Geographical names, terms and words, as well as descriptive words, may not be exclusively appropriated. This is the unequivocal rule of the common law and is statutory in this state. Section 11902, O. S. 1931; Delaware, etc., Canal Co. v. Clark, 13 Wall. (U. S.) 311, 20 L. Ed. 581; Columbia Mill Co. v. Alcorn, 150 U. S. 464, 14 Sup. Ct. 151, 37 L. Ed. 1144; Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993; Goodyear India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535; and Nebraska Loan & T. Co. v. Nine, 27 Neb. 507, 43 N. W. 348, 20 Am. St. Rep. 686.

But the use of geographical names or terms to palm off the goods of one manufacturer, dealer, or vendor as those of another, and to carry on unfair competition, may be lawfully enjoined by a court of equity to the same extent as the use of any other

terms or symbols. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 S. Ct. 396, 34 L. Ed. 997; Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 Okla. U. S. 665, 21 S. Ct. 270, 45 L. Ed. 365; Saxlehner v. Eisner, etc., Co., 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60; Pillsbury-Washburn Flour Mills Co. v. Eagle, 86 Fed. 608, 58 U. S. App. 490, 30 C. C. A. 386, 41 L. R. A. 162; Carlsbad v. Kutnow, 71 Fed. 167, 35 U. S. App. 750, 18 C. C. A. 24; Block v. Standard Distilling, etc., Co., 95 Fed. 978; Meyer v. Dr. B. L. Bull Vegetable Medicine Co., 58 Fed. 884, 18 U. S. App. 372, 7 C. C. A. 558; Busby v. Davis, 150 Fed. 275; Shaver v. Heller & Merz Co., 108 Fed. 821.

In the case of Dyment v. Lewis (Iowa) 123 N. W. 244, 26 L. R. A. (N. S.) 73, the Supreme Court of Iowa, in dealing with the use of geographic names and the subject of unfair competition in connection therewith, said:

"Appellant has a large number of decisions to the effect that one is not entitled to protection in the use of a trade-mark which is purely descriptive of his business or of this in connection with the locality where conducted. Whatever may be the law with reference to trade-marks, this is not the unvarying rule applied in cases of unfair competition. The distinction between the law of trade-marks and that of unfair competition is pointed out in Sartor v. Schaden, 125 Iowa, 696, 101 N. W. 511, where the latter is said to be bottomed on the principle of common business integrity and to proceed on theory that 'while a primary and common use of a word or phrase may not be exclusively appropriated, there may be a secondary meaning or construction which will belong to the person who has developed it. In this secondary meaning there may be a property right. * * * Consequently unfair competition is distinguished from trade-mark cases in this, that it does not necessarily involve the question of the exclusive right of another to use the name, symbol, or device. A word may not be capable of becoming an arbitrary trade-mark, and yet there may be an unfair use of the word which will constitute unfair trade. The whole doctrine is based upon the theory of protection to the public, whose rights are infringed or jeopardized by confusion of goods produced by unfair methods of trade, as well as upon the right of the complainant to enjoy the good will of a trade built up through his efforts, and sought to be taken from him by unfair methods.' One using the ordinary name of a commodity, business, or occupation in connection with the name of a locality will not always be entitled to protection. This necessarily depends on circumstances."

The Supreme Court of Rhode Island, in distinguishing between infringement of trademarks and unfair use of trade-names, in the case of Cady v. Schultz, 19 R. I. 193, 32 Atl. 915, 29 L. R. A. 524, said:

"A trade-name is of a different character. It is descriptive of the manufacturer or dealer himself as much as his own name is, and frequently, like the names of business corporations, includes the name of the place where the business is located. If attached to goods, it is designed to say plainly what a trade-mark only indicates by association and use. The employment of such a name is subject to the same rules which apply to the use of one's own name of birth or baptism. Two persons may bear the same name, and each may use it in his business, but not so as to deceive the public and induce customers to mistake one for the other. The use of one's own name is unlawful if exercised fraudulently to attract custom from another bearer of it."

A name adopted by the second user may amount to unfair competition if a similar word or words are used and in such manner as to deceive the public; it is not necessary that the exact word or words be used. See note to Dyment v. Lewis, supra, 26 L. R. A. (N. S.) 77, and cases cited therein.

Thus, in the case of Walker & Sons v. Mikolas, 79 Fed. 955, it was held that the words "Canadian Rye Whiskey" so closely simulate the words "Canadian Club Whiskey" (the bottles and labels also being closely simulated) as to amount to unfair competition.

Some cases go so far as to hold, in order that the use of a geographic name may be enjoined on the ground of unfair competition, an actual intention to defraud must be shown. See cases collected in note at 26 L. R. A. (N. S.) 77; Nims on Unfair Business Competition, sections 25 and 26. Others are to the contrary.

Perhaps the decisions which seem to be in confusion can be reconciled by a careful consideration of the precise facts of each case, but it would avail little to review them in detail. Doubtless, in many particular instances, an injunction might well be awarded or refused according to whether an intentional wrong has been done. According to the more modern and more recent decisions, however, we do not think that proof of intentional fraud is essential. The true rule on this point has been well stated by the Supreme Court of Kansas, in the case of Kansas Milling Co. v. Kansas Flour Mills Co., 89 Kan. 855, 133 P. 542. In that case the Supreme Court of Kansas said:

"* * * But we do not think it should be said broadly that proof of intentional fraud is essential to the granting of such relief. While the existence of a wrongful intent might justify the interference of a court of equity upon a less showing of injury than would otherwise be required, the absence of such specific intent ought not to stay the hand of the court where a name is adopted so similar to that already in use by a business rival that injury to the first user will obviously and inevitably result."

But what degree of similarity in names justifies the granting of an injunction? There must be such a similarity that the ordinary buyer, exercising ordinary intelligence and observation in business matters, will certainly or probably be deceived. Mere possibility of deception is not sufficient. As was said by the Supreme Court of California, in the case of American Automobile Association v. American Automobile Owners Association, 13 P. (2d) 707, in discussing the practice of courts and their methods of determining similarity:

"When so examined, the emblems of the contending competitors differ in so many conspicuous and essential features—in name, coloring, number and formation of letters, symbol—that it does not seem possible the one should be mistaken for the other by persons of ordinary intelligence, exercising ordinary care in the concerns of business."

The rule is well stated in the case of Hilton v. Hilton, 89 N. J. Eq. 472, 106 Atl. 139, as follows:

"The rule, of course, is that the similitude must be sufficient to confuse an ordinarily prudent man, but the test as to the care or prudence is not the precautions which a reasonably prudent man would take when investing money, or what not, but the precaution which he would take ordinarily in determining, in buying a suit of clothes, that he was in the store he thought he was in."

In the case of Union Fishermen's Co-op. Packing Co. v. Point Adams Packing Co., 108 Ore. 535, 217 P. 642, the rule was stated thus, in the eighth paragraph of the syllabus:

"That a purchaser must exercise reasonable care in examining the goods to ascertain that he gets what he wants is a test applicable in considering whether there was deception of the ordinary purchaser by alleged unfair trade."

Other cases to the same or similar effect are: Bissell Chilled Plow Works v. T. M. Bissell Plow Co. (C. C.) 121 Fed. 357; Auto Acetylene Light Co. v. Prest-O-Lite Co. (C. C. A.) 264 Fed. 810; H. E. Winterton Gum Co. v. Autosales Gum & Chocolate Co. (C. C. A.) 211 Fed. 612; Dodge Bros. v. East (D. C.) 8 Fed. (2d) 872; Anheuser-Busch v. Budweiser Malt Products Corp. (D. C.) 287 Fed. 243, affirmed in (C. C. A.) 295 Fed. 306.

The same rule is stated thus, in 63 C. J. at page 399, wherein it is said:

"As in the case of infringement by imitation of another's trade-mark, the true test of unfair competition is whether the acts of defendant are such as are calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates. This has been said to include the incautious, unwary, or ignorant purchaser, but not careless purchasers who make no examination."

Testing the issues in this case by the foregoing rules, we are forced to the conclusion that the name the Coalgate Abstract Company would not be confused by or deceiving to the ordinary person, exercising ordinary intelligence in business matters, with the name the Coal County Abstract Company. Indeed we think that only the most careless person would be deceived or confused by any supposed similarity in the two names.

We therefore hold that the trial court erred in enjoining the defendant from using the name the Coalgate Abstract Company.

The judgment of the trial court is therefore reversed, with directions to render judgment for the Coalgate Abstract Company.

The Supreme Court acknowledges the aid of Attorneys E. C. Mead, Carl H. Livingston, and Oras A. Shaw in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Mead, and approved by Mr. Livingston and Mr. Shaw, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted, as modified.

OSBORN, C. J., and RILEY, PHELPS, and CORN, JJ., concur.