### NEBRASKA CONSOLIDATED MILLS v. SHAWNEE MILLING CO.
### Civ. 4598.

United States District Court
W. D. Oklahoma.

Aug. 3, 1951.

Wilkinson, Huxley, Byron & Hume, Chicago, Ill., and Byrne A. Bowman, Oklahoma City, Okl., for plaintiff.

Abernathy & Abernathy, Shawnee, Okl., for defendant.

VAUGHT, Chief Judge.

The plaintiff, a Nebraska corporation engaged in the flour milling business, with its principal place of business at Omaha, seeks to enjoin the defendant from the infringement of its trade-mark Mother's Best, and for further relief.

It alleges that it has been engaged in the manufacture of flour, and the extensive advertising, distribution and sale of flour under the trade-name Mother's Best for many years; that by itself and through its predecessor it has used said name since 1911; that the defendant has entered the market in the territory occupied by plaintiff, particularly in Alabama, in competition with plaintiff, with a flour under the trade-name Mother's Pride; that said name is

an infringement of its trade-mark Mother's Best, and that the defendant in competing in said territory is engaged in unfair competition. Plaintiff seeks to enjoin defendant (a) from conducting business and from using in the manufacture, sale and distribution of flour or similar products, the trade-name Mother's Pride, Mother's, or any combination thereof in which Mother's is the predominating word or any colorable imitation of plaintiff's trade-mark Mother's Best, and (b) from unfairly competing with plaintiff in the sale of flour and related products, and asks for an accounting and other relief.

Defendant in its answer denied that it is unfairly competing with the plaintiff in the sale and distribution of flour under the trade-name Mother's Pride and alleged that it has used the trade-name Mother's Pride throughout the Southwest for many years and continuously since it acquired the trade-name from its predecessor; that it acquired the trade-name in 1932 but said trade-name had been used continuously since 1909 by its predecessor. The defendant further alleges that the name Mother's belongs to the public and is not susceptible of exclusive appropriation by any manufacturer or distributor, and that the packages, containers, labels, et cetera bearing the names Mother's Best and Mother's Pride are so dissimilar that the ordinary buyer exercising ordinary intelligence in business matters would not be confused by the brands or names.

The facts are that prior to 1920 Henry Glade & Co. had applied for the registration of the trade-mark Mother's Best but was unsuccessful. It is admitted that the trade-mark Mother's Best was never registered in the United States Patent Office and that plaintiff had no knowledge of the use of such trade-mark prior to 1920 when, in purchasing the assets and good will of Henry Glade & Co., it found that said company had made some use of said trade-mark but the evidence is indefinite as to whether any flour was ever sold prior to 1920 by Henry Glade & Co. under the trade-name Mother's Best. Since 1920 the plaintiff has used and advertised Mother's Best as a trade-name continuously and extensively.

The evidence also discloses that the name Mother's Pride was a flour brand used by Okeene Milling Company as early as 1909 and was being used in 1917 when said company was sold to J. Lloyd Ford, operating as Shawnee Milling Company. The Shawnee Milling Company was organized as a corporation in 1932 and it has used the brand Mother's Pride continuously and extensively.

The evidence further discloses that Mother's Best was the name of a brand used by Pauls Valley Milling Company as early as 1907, which company was purchased by Shawnee Milling Company in 1915.

There apparently was no conflict between plaintiff and defendant in the distribution of their flours until 1940 when the plaintiff, under date of January 4, 1940, wrote J. Lloyd Ford that it was advised the defendant was using the brand Mother's Best in the State of Alabama. This letter, signed by R. S. Dickinson, President, further stated: "This brand, Mr. Ford, *has been registered* by us and used by us a good many years, and in that particular territory for about ten years," and requested that the use of said brand by defendant be discontinued. On January 8, the defendant, through its sales manager, wrote Mr. Dickinson as follows:

"Since you are registered, we will, of course, refrain from shipping this brand of flour into the territory. We were not aware of the fact that the brand belonged to you, and the truth of the matter is, we have been using it for quite some time here in Oklahoma.

"We are advising our salesman to withdraw this brand from sale, and you may rest assured that we will not offer it any more."

On March 5, 1940, the plaintiff wrote the sales manager of the defendant company stating that the defendant was still selling Mother's Best in Alabama and called attention to the defendant's letter in which it agreed to refrain from further sales of

Mother's Best in that territory. Replying on March 7, 1940, the sales manager of defendant explained that the sale of Mother's Best in Alabama was an oversight, as the shipment was made while he was out of the office, by an employee who was not aware of the correspondence between the plaintiff and the defendant relative to the sale of Mother's Best, and stated further: "We assure you that we had no intention of going around our letter in which we told you that we would discontinue the brand down there, and we really feel that your salesman is unduly alarmed as there has only been ten barrels of the flour sold." On December 17, 1941, plaintiff, through its president, wrote Okeene Milling Company as follows:

"* * * I noticed several sacks of your 'Mother's Pride' flour distributed in that territory.

"For your information, Gentlemen, we have been distributing our 'Mother's Best' flour throughout the Southeast for a good many years. This would include some in Mississippi, Tennessee, and a considerable amount in Alabama, Georgia and the Carolinas over a period of years."

The letter claimed priority of the use of Mother's Best and inquired about the use of the brand Mother's Pride by defendant. Mr. Ford, as president of Shawnee Milling Company, answered this letter February 6, 1942, in which he called attention to the fact that Shawnee Milling Company had been using the brand Mother's Pride since 1917 when it was bought from Okeene Milling Company and that it had been used for many years before that time. On March 11, 1942, defendant, by its sales manager F. H. Bateman, wrote the plaintiff: "Referring to correspondence which has taken place between yourself and Mr. Ford with reference to our Mother's Pride label from our Okeene Milling Company plant which Mr. Ford advised you was being held for my return to the office, has now come to my attention and I will endeavor to answer your letters of December 17 and March 3." This letter stated that Mother's Pride had been a leading brand of their Okeene plant for a good many years and had been sold in the South and

Southeast for possibly twenty years or more. It called plaintiff's attention to the fact that defendant also had a brand Mother's Best which belonged originally to its Pauls Valley plant; that some three or four years earlier plaintiff requested defendant to withdraw that brand from sale in Arkansas and some of the Southeastern states, which was done, and stated that at that time not a sack of Mother's Best was being offered for sale in the territory claimed by plaintiff. The letter, in recalling defendant's long use of the brand Mother's Pride, concluded: "There are, as you know, any number of brands of flour with the word Mother's on them and in view of the above explanation, we do not feel that you would be justified in asking us to withdraw our Mother's Pride brand nor do we feel that it would be fair to our customers long established on this brand to do so." Plaintiff replied to this letter on March 14, 1942 as follows: "I am aware, Mr. Bateman, that you have used this Mother's Pride brand for a good many years, *and I, myself, think that the difference between the two brands is enough so that there will be no great deal of confusion.*" (Emphasis supplied.) Further correspondence was had which is not material as it had to do with the use by the defendant of the brand Mother's Best.

It is apparent from the correspondence that on October 8, 1943 defendant discontinued the use of the trade-mark Mother's Best on its flour, and no further contention arose between the parties until October, 16, 1946, when the president of plaintiff company, by letter, protested the use of Mother's Pride in Alabama and stated: "If you will refer to your letter to us of September 29th, 1943, you will note you state your intentions to discontinue this brand entirely. I really think, Mr. Ford, that that is the smartest thing you could possibly do."

In July, 1949, the defendant wrote the president of the plaintiff company referring to the previous correspondence. (It appears that much of the correspondence between the parties was destroyed by a fire in the defendant's building and references to prior letters were made from memory.)

Mr. Ford reviewed the correspondence in which he stated that they had agreed to discontinue the use of Mother's Best, but denied they had ever agreed to discontinue the use of Mother's Pride, and further advised that they had applied for registration of Mother's Pride at the Patent Office. He again assured plaintiff that it was not their desire in any way to interfere with the use of plaintiff's Mother's Best but they would continue to use Mother's Pride.

There are certain things in the correspondence which are significant. In the letter of Mr. Dickinson on January 4, 1940 he made the statement: "This brand, Mr. Ford, has been registered by us and used by us a good many years, and in that particular territory for about ten years." This statement was not correct. Mr. Dickinson testified that this brand had not been registered, that the plaintiff's predecessor had applied for registration but it was not granted. It appears that any concession made by the defendant as to the use by it of Mother's Best was made upon the plaintiff's representation that it was registered by plaintiff and that it had exclusive right to its use. Nowhere in the correspondence, however, did defendant ever agree to discontinue the use of Mother's Pride. The evidence discloses that the defendant and its predecessor had used Mother's Pride since approximately 1909 and that plaintiff had used Mother's Best since 1920 and was advised that it had been used by its predecessor, Henry Glade & Company, since approximately 1911. However, there was no satisfactory evidence introduced to show the actual use and sale of flour under the name Mother's Best by the plaintiff or its predecessor prior to 1920.

At this point it might be helpful to discuss briefly the use of Mother's Best and Mother's Pride as trade-names. The word or identity "mother" is just as old as the human race. It had its origin in the Garden of Eden when Eve became the first mother. The name mother is so intimately associated with the home and the family that one is never thought of without the other. In our modern commercial life the word mother has become so attached to everything connected with the home that the name has taken on commercial significance and has been applied or attached to almost every home article or device which would appeal to the buying public. There is not only mother's flour, but mother's oats, mother's cocoa, mother's mayonnaise, mother's salad dressing, mother's sandwich spread, mother's meal, mother's syrup, mother's extracts, and many other articles for home use. The word, therefore, has become so universal in meaning and in use that its exclusive use for any commercial purpose has been judically prohibited. As to flour, the evidence shows that Mother's was manufactured and marketed by Quaker Oats Company, Chicago, first in July, 1895, has been on the market since that time and is registered in the United States Patent Office; Mother's Choice has been manufactured and marketed since February, 1896 by John Bird Company, Rockland, Maine; Mother's Select by Clinard Milling Company, High Point, North Carolina, since October, 1920; Mother Nature by Pfeffer Milling Company, Lebanon, Illinois, since September 6, 1922; Mother Hubbard by Hubbard Milling Company, Mankato, Minnesota, since January 1, 1910; Mother's Joy by James W. Crook, Baltimore, Maryland, since 1891 and Gilster Milling Company, Chester, Illinois, since 1909; Mother Goose by Dunlop Milling Company, Clarksville, Tennessee, since January 15, 1913; Ask Your Mother by Thornton & Chester Milling Company, Buffalo, New York, since July 27, 1915; Mother's Pet by Empire State Flour Mills, Buffalo, New York, since February 29, 1932; Mother's Prize by Twin City Flouring Mills, Newark, New Jersey, since March, 1932; and Mother's Delight by Cornesville Milling Company, Cornesville, Tennessee, since 1917.

As to the trade-name of the defendant, the undisputed evidence discloses that Mother's Pride was a flour brand used extensively by Okeene Milling Company in 1917 when it was sold to J. Lloyd Ford, operating as Shawnee Milling Company, and that said name had been used at least

eight years prior to the transfer to Ford, which would place it in the market at least as early as 1909. The trade-name Mother's Pride now represents sixty per cent of the family flour sales of the defendant. Among the brands used by the Pauls Valley Milling Company was also a brand named Mother's Best.

In considering the words "best" and "pride" it is observed that the word "best" is a well-recognized superlative. In the commercial world its use to denote the highest grade material is universal. Thousands of articles have carried a designation of "best" associated with the particular name of the article advertised. In the flour trade the name has been used to denote high-grade flour, such as Mother's Best, Shawnee's Best, Glade's Best, Pillsbury's Best, Garch's Best, Yukon's Best, Butler's Best, et cetera. The word "pride" also has a universal meaning and as commercially used in the flour trade signifies a high grade of flour, nothing more. The real distinction between similar brands of high-grade flour is the name of the manufacturer, and however modest the manufacturer may be, the name of the milling company always appears upon the packages and in such a conspicuous place that it can easily be seen by anyone interested sufficiently to make a casual observation.

Notwithstanding the fact that these brands were being offered and marketed freely, there seems to have been no conflict or confusion about the matter until 1940. Fortunately the correspondence between the parties reflects the entire picture concerning the controversy, and upon an analysis of the correspondence we are forced to the conclusion that the plaintiff has little ground for its contention as to unfair competition.

As noted above, plaintiff in its letter of March 14, 1942, stated: "I, myself, think that the difference between the two brands is enough so that there will be no great deal of confusion."

On the question of the use of the brands, the court finds that the evidence supports the contention of the defendant that the brand Mother's Pride has been used by the defendant and its predecessors, to which defendant is the legal successor, since approximately 1909, and that its use has been general and extensive since 1917.

The court also finds that the plaintiff has used the brand Mother's Best continuously and extensively since 1920 and that its predecessor had made application for registration of the brand, but the evidence that the brand actually was used in the sale of flour prior to 1920 is indefinite and unsatisfactory.

The next question is whether or not there is such marked similarity between the names Mother's Best and Mother's Pride as to confuse the public.

In Coalgate Abstract Co. v. Coal County Abstract Co., 180 Okl. 8, 67 P.2d 37, 38, the Supreme Court of Oklahoma held: "Under the law of unfair competition, in order to enjoin the use of a trade-name there must be such a similarity to one formerly used or employed that the ordinary buyer, exercising ordinary intelligence and observation in business matters, will certainly or probably be deceived. Mere possibility of deception and confusion is not sufficient."

An examination of the bags in which the flour is sold shows such a marked difference in appearance that there is little basis for concluding that there is such similarity as would confuse any ordinary buyer. The evidence is not sufficient to convince this court that the designs are so similar that the buying public would be deceived.

While it may not be material to pass upon this point, this court is of the opinion that the word "mother's" is incapable of exclusive commercial use by anyone for the reasons hereinbefore stated, and also that the words "best" and "pride" are of such general use and meaning that their exclusive use is not permissible commercially.

The relief sought by the plaintiff will be denied and judgment rendered in favor of the defendant for its costs.

Findings of fact, conclusions of law and a form of judgment consistent with this opinion may be submitted within fifteen days of this date.