BEATRICE FOODS CO., a corporation,
Appellant,

v.

NEOSHO VALLEY COOPERATIVE
CREAMERY ASSOCIATION, a
corporation, Appellee.

No. 6645.

United States Court of Appeals
Tenth Circuit.

Nov. 22, 1961.

Neil McKay, Chicago, Ill. (William
G. Mitchell and Winston, Strawn, Smith
& Patterson, Chicago, Ill., and Stanley
D. Campbell, Tulsa, Okl., with him on
the brief), for appellant.

Robert D. Hovey, Kansas City, Mo.
(Donald E. Johnson, of Hovey, Schmidt,
Johnson & Hovey, Kansas City, Mo.,
Robert J. Woolsey, of Farmer, Woolsey,
Flippo & Bailey, Tulsa, Okl., and Clark
Fleming, Erie, Kan., with him on the
brief), for appellee.

Before PHILLIPS, PICKETT and
HILL, Circuit Judges.

PICKETT, Circuit Judge.

Beatrice Foods Company brought this
action alleging that the defendant,
Neosho Valley Cooperative Creamery
Association, by the use of its trade name
"Meadow Sweet" on its dairy products,
was infringing its registered trade-
mark "Meadow Gold", and engaging in
unfair competition. In its answer Neo-
sho denied the allegations that there was
likelihood of confusion between the
trademarks and that it was guilty of un-
fair competition. This is an appeal from
a judgment denying injunctive relief and
dismissing the complaint.

Since 1901 Beatrice Foods Company,
or one of its predecessors, has engaged
in distributing dairy products under the
trade name of "Meadow Gold". Over
the years its business has expanded to
such an extent that it is now one of the
nation's leading distributors of dairy
products. Meadow Gold products are
displayed to the public nationwide and
locally by every media of advertising,
and there can be little doubt of the pub-
lic acceptance of its products or the
awareness that they are produced by
Beatrice Foods Company. Neosho does
not contend otherwise.

In 1938 Neosho was incorporated as
a cooperative association to engage, prin-
cipally in southeastern Kansas, in the

processing and sale of dairy products for the benefit of its members. Shortly after its organization, Neosho conducted a contest to select a brand name for its products. The winner, who received a $10.00 prize, suggested the name "Meadow Sweet", and thereafter its products were identified by that name. It is not contended that Neosho intended to create confusion, or that there was a conscious effort to imitate the Meadow Gold Trademark. During the following years Neosho's business grew, and its territory expanded. In 1958 it acquired the business of Puritan Dairies, Inc., and its subsidiaries, which resulted in an expansion of its sales territory into parts of Missouri and Oklahoma where Meadow Gold products were also sold. Beatrice had knowledge of Neosho's use of the brand name Meadow Sweet, but it did not object to that trade name until after the 1958 acquisition and expansion. An objection was then lodged, and upon refusal of Neosho to discontinue the use of its brand name this action was brought for an injunction. In dismissing the action the trial court found that "the trade marks 'Meadow Gold' and 'Meadow Sweet', when applied to dairy products, are not confusingly similar to purchasers using ordinary care." The principal question presented is whether the record sustained this finding.

The primary function of a trademark used in business or trade is to distinguish goods as the products of a particular manufacturer or trader and to prevent another from passing off its goods as those of the manufacturer or trader identified by the trademark. Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568; Schneider Brewing Co. v. Century Distilling Co., 10 Cir., 107 F.2d 699; American Photographic Pub. Co. v. Ziff-Davis Pub. Co., 7 Cir., 135 F.2d 569. "With essential qualifications, one infringes the trade-mark of another if the designation he uses to identify his goods is 'identical with or confusingly similar' to another's protected trademark." Avrick v. Rockmont Envelope Co., supra [155 F.2d 572]. The development of advertising on a national scale caused trade-marks to perform an additional function in the field of advertising and sales promotion. Restatement, Torts § 715 (1938); Avrick v. Rockmont Envelope Co., supra.[1]

The statutory test of infringement is whether the "use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * *." 15 U.S.C.A. § 1114. This court has discussed the concept of trademark infringement on several occasions. In Schneider Brewing Co. v. Century Distilling Co., supra, 107 F.2d at 704, we said:

"The test is whether the similitude in the labels would probably deceive a purchaser who exercises ordinary prudence, not the careless buyer who makes no examination."

This test was quoted and followed in Nebraska Consol. Mills Co. v. Shawnee Milling Co., 10 Cir., 198 F.2d 36. In Avrick v. Rockmont Envelope Co., supra, 155 F.2d at 572, it was said:

"It is the generally accepted rule that a designation is confusingly

1. In Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381, the Court said:

"The protection of trade-marks is the law's recognition of the psychological function of symbols. If it is true that we live by symbols, it is no less true that we purchase goods by them. A trademark is a merchandising short-cut which induces a purchaser to select what he wants, or what he has been led to believe he wants. The owner of a mark exploits this human propensity by making every effort to impregnate the atmosphere of the market with the drawing power of a congenial symbol. Whatever the means employed, the aim is the same —to convey through the mark, in the minds of potential customers, the desirability of the commodity upon which it appears. Once this is attained, the trademark owner has something of value. If another poaches upon the commercial magnetism of the symbol he has created, the owner can obtain legal redress."

similar to a trade-mark if an ordinary prospective purchaser, exercising due care in the circumstances, is likely to regard it as coming from the same source as the trade-marked article. * * * The question is usually one of fact * * *, which in some cases may be determined by visual comparison, as where specific differences are so marked that the general appearance could not be confusing, * * or where it is inconceivable that an ordinary purchaser examining the two labels would be deceived. * * * In other cases extrinsic evidence may be necessary. * * "

To the same effect are National Nu Grape Co. v. Guest, 10 Cir., 164 F.2d 874, cert. denied 333 U.S. 874, 68 S.Ct. 903, 92 L.Ed. 1150, and Standard Oil Co. v. Standard Oil Co., 10 Cir., 252 F. 2d 65.[2] The rule as stated in Restatement, Torts § 728 (1938):

"A designation is confusingly similar to a trade-mark or trade name under the rule stated in § 717 if prospective purchasers are likely to regard it as indicating the source identified by the trade-mark or trade name"

was quoted with approval in the Standard Oil case. The same language was used in Friedman v. Sealy, Inc., 10 Cir., 274 F.2d 255.

Beatrice Foods Company produced a number of witnesses who testified, in substance, that purchasers of dairy products, and others, thought the Neosho product was the same as that marketed by Beatrice and was "something Meadow Gold put out." No witness testified that he was confused by the trademarks used on the packages or the appearance of the packages. The trial court considered this evidence, together with the other evidence, including exhibits of the trademarks as placed upon the cartons in which the products of the two companies were offered for sale, in making its finding that a purchaser exercising ordinary prudence would not be confused. The Meadow Gold trademark appears on all packages by a prominent and unique red shield with the words "Meadow Gold" printed in white thereon.[3] Except on its ice cream packages, Neosho did not display its trade name on a shield or with any particular prominence. The Beatrice shield and the one used by Neosho on its ice cream packages are not similar; the Neosho shield is of an entirely different shape and color, and includes the drawing of a western T. V. star. If there was an infringement it was through the use of the word "Meadow" in the trade name "Meadow Sweet".

■ The determination of whether these two trade names are confusingly similar is a question of fact. The finding of the trial court must be upheld unless clearly erroneous. Fed.R.Civ.P. 52(a), 28 U.S.C.A.; Standard Oil Co. v. Standard Oil Co., supra. A visual observation of the words and the manner in which they are arranged on the packages does not conclusively establish that a reasonably careful person would be confused in distinguishing the two products. Although some of Neosho's packages, particularly those containing milk, use the same coloring, the arrangement of the colors is entirely dissimilar from that on the Beatrice packages. Except for the use of the word "Meadow", the two trade names are not phonetically alike, and, as they are used by the parties, the impact on the eye and the ear is not similar nor is a similar connotation carried to the brain of a prospective purchaser as was suggested in Friedman v. Sealy, Inc., supra. The facts here are almost identical to those in Nebraska Consol. Mills Co. v. Shawnee Milling Co., supra, where we held

2. This is also the law of Oklahoma. Nebraska Consol. Mills Co. v. Shawnee Milling Co., 10 Cir., 198 F.2d 36; Coalgate Abstract Co. v. Coal County Abstract Co., 180 Okl. 8, 67 P.2d 37; Stillwater Milling Co. v. Eddie, 188 Okl. 234, 108 P.2d 126.

3. It is not clear whether the red shield is used on the Beatrice Foods Company's butter packages.

that there was little likelihood of confusion in the trade names "Mother's Best" and "Mother's Pride" used on containers of flour. See Avrick v. Rockmont Envelope Co., supra.

From a consideration of the entire record, we agree with the trial court's finding that the mind of an ordinary purchaser, exercising due care in the market place, would not be confused as to the two trademarks, and that there is no colorable imitation of the Beatrice trademark which is likely to cause confusion or deceive a prudent purchaser as to the source of the product even though the packages are sold from the same shelves in the same stores. It is unnecessary to consider other grounds upon which the trial court based its decision.

Affirmed.