**GENERAL ADJUSTMENT BUREAU, INC., a Corporation, Plaintiff,**
v.
**GENERAL INSURANCE ADJUSTMENT COMPANY, a Corporation, Defendant.**
**No. 6280.**

United States District Court
N. D. Oklahoma.
Sept. 15, 1966.

Walter D. Hanson, of Hanson, Fisher, Peterson, Melton & Tompkins, Oklahoma City, Okl., for plaintiff.

Jack N. Hays and Richard W. Gable, of Gable, Gotwals, Hays, Rubin & Fox, Tulsa, Okl., for defendant.

## OPINION

BOHANON, District Judge.

This action was instituted in the Northern District of Oklahoma by General Adjustment Bureau, Inc., a corporation, against General Insurance Adjustment Company, a corporation, seeking to enjoin the defendant from using the name "General Insurance Adjustment Company," or any combination containing the two words "General Adjustment."

There is diversity of citizenship, and the amount in controversy exceeds the sum of $10,000, exclusive of interest and costs.

## Findings

1. Neither party's corporate name, nor shortened version thereof, is registered under the Trademark Act, 15 U.S.C. Sec. 1051 et seq.

2. The plaintiff is a New York corporation, with its principal place of business in New York City, and the defendant is an Oklahoma corporation, with its principal place of business at Tulsa, Oklahoma.

3. The plaintiff's business consists of the adjustment of losses under contracts of insurance throughout the United States. Plaintiff has been in the adjustment business for many years, taking its present name in 1947. Plaintiff's business is the handling of claims for fire and casualty insurance companies, and for them only, representing approximately 260 separate insurance companies; 85 per cent are stockholders of the plaintiff company and 15 per cent are not. At the end of each year the profits of the plaintiff company are returned to the insurance companies it represents on a pro rata basis to both shareowners and non-shareowners, making the plaintiff in all material respects a non-profit organization with captive clients.

Defendant was incorporated March 12, 1965, in Oklahoma, under the name "General Insurance Adjustment Company." Since the incorporation of the defendant, it has been performing general insurance adjustment services for an affiliated company, "National Trailer Convoy, Inc."

Services rendered by the defendant to National Trailer Convoy, Inc., are on a nation-wide basis, and include a variety of different kinds of claims. Both plaintiff and defendant chose their respective names to fairly and accurately describe their field of service.

The plaintiff, for its insurance companies, handles thousands of claims annually throughout the United States, the volume of claims paid in dollars amounting to over a billion dollars annually. Plaintiff has 5 departmental offices, 72 regional offices, 766 branch offices, 3758 adjusters, and 1694 clerical personnel. Defendant has only one office, its home office, at Tulsa, Oklahoma, and employs about 6 to 8 adjusters and 2 or 3 other office personnel. All claims for National Trailer Convoy, Inc., are handled through this Tulsa office, as also are claims for sister companies of National Trailer. Practically all of the claims adjusted by the defendant company are handled throughout the United States by independent adjusters assigned or chosen by the defendant company from its Tulsa headquarters. Defendant represents no company other than National Convoy Trailer, Inc., and its sister or affiliated companies and has not sought to represent any other company or the public generally.

About May 10, 1965, the plaintiff, by Certified mail, notified the defendant that its name was deceptively similar to that of the plaintiff, and further advised the defendant that unless prompt action was taken to change the name of the company so that there would be no possibility of confusion between the two, appropriate legal action would follow. No such change was made, and this action followed.

Plaintiff annually expends rather large sums of money in training its personnel so as to be able to render efficient, prompt, and reliable service to its clients, that is, the insurance companies it represents, but does no advertising.

The General Adjustment Bureau, plaintiff in this case, claims that the words "General Adjustment" have acquired a secondary meaning which it is entitled to have protected by this Court by means of injunctive relief, and further contends that the defendant's name is so similar to plaintiff's that the manner and use of the name is confusing, deceptive, and a colorable imitation likely to cause confusion, amounting to unfair competition.

The defendant denies the material parts of the Complaint.

■ The burden of proof rests upon the plaintiff to prove as a matter of fact that the words "General Adjustment" have acquired a "secondary meaning." That defendant name is "confusingly similar" to plaintiff's name, and the manner of use by defendant of its name is "unfair," and "enjoinable."

■ The only evidence of confusion regards a small number of misdirected pieces of mail and a few telephone calls, all of which resulted in no loss to plaintiff and were promptly forwarded to the plaintiff. The plaintiff has failed to prove that the name "General Insurance Adjustment Company" is deceptively similar, or confusingly similar, to the name "General Adjustment Bureau, Inc."

■ Descriptive terms applicable to all in the same business may not be appropriated by one person or firm exclusively so that the use of the term itself would make it unfair competition. Such terms are not indicative of particular goods or services, but of their nature. To permit exclusive appropriation of such terms would be to permit monopolization of a common term and would constitute an infringement upon common speech.

The Oklahoma Business Corporation Act, Title 18 Okla.Stat. Sec. 1.11(c), forbids any corporation to adopt a name which is the same as, or deceptively similar to the name of any other domestic or domesticated corporation then existing.

The Secretary of State is the State Officer who is authorized to review Articles of Incorporation and grant or deny corporate charters. Title 18 Okla.Stat. Sec. 1.14(c) states:

"Such certificate of incorporation shall be conclusive evidence, except as against the State, that all conditions precedent required to be performed by the incorporators in creating a de-jure corporation have been complied with * * *"

In Coalgate Abstract Company v. Coal County Abstract Company, 180 Okl. 8, 67 P.2d, beginning at page 37, the Court said:

"Under the law of unfair competition, in order to enjoin the use of a tradename there must be such a similarity to one formerly used or employed that the ordinary buyer, exercising ordinary intelligence and observation in business matters, will certainly or probably be deceived. Mere possibility of deception and confusion is not sufficient."

The plaintiff relies largely upon the case of General Adjustment Bureau, Inc. v. Fuess, 192 F.Supp. 542. The United States District Court for the Southern District of Texas, Houston Division, in the Fuess case, approved a quotation from a Fifth Circuit case as follows:

"* * * We take it to be the accepted rule that to establish infringement, plaintiff need only show as it did here that the name adopted by defendants is so similar to its trademark as to be likely to cause confusion among reasonably careful purchasers. * * *"

■ The test approved in the Fuess case is not the rule approved by the Supreme Court of Oklahoma, and this case is governed by Oklahoma law.

In the case of Poulos v. Carter, 200 Okl. 325, 193 P.2d 591, the plaintiff there alleged that it was doing business under the name "Day and Nite Cleaners," and that defendant subsequently began doing competitive business under the name "Boston Day and Night Cleaners." Plaintiff requested an injunction, which was denied. The Supreme Court said:

"To contend that customers of plaintiff could be misled by the phonetic similarity of the word 'night' and the combination of the letters 'nite' is to say that they are ignorant or careless or unobservant. No person with a knowledge of the English language would be misled as to the identity of the two establishments by the mere phonetics of the two trade names."

In the case of Nebraska Consolidated Mills Co. v. Shawnee Milling Company (10 Cir.), 198 F.2d 36, Nebraska brought the action asserting common-law rights to its trademark, "Mother's Best," by

Shawnee's use of the trademark "Mother's Pride," on identical goods, and that Shawnee has engaged in unfair competition calculated to deceive the purchasing public. The Nebraska case quoted the case of Stillwater Milling Company v. Eddie, 188 Okl. 234, 108 P.2d 126, 128, as follows:

"The principles by which it may be determined whether or not simulation of an established trade-mark or tradename constitutes unfair competition and thus justifies injunctive relief has been recently reiterated by this court. In the case of Coalgate Abstract Co. v. Coal County Abstract Co., 180 Okl. 8, 67 P.2d 37, it was held: 'Under the law of unfair competition, in order to enjoin the use of a tradename there must be such a similarity to one formerly used or employed that the ordinary buyer, exercising ordinary intelligence and observation in business matters, will certainly or probably be deceived. *Mere possibility of deception and confusion is not sufficient.*'" (Emphasis supplied.)

■ Plaintiff's customers, being all insurance companies, and long experienced in the insurance business and the handling of claims, will not certainly or probably be received or confused. They are either the owners of plaintiff or participate in its earnings.

In the case of National Nu Grape Company v. Guest, 164 F.2d 874 (10 Cir.), a case arising in the Eastern District of Oklahoma, Judge Huxman in the Opinion said:

"A descriptive mark is bad for two reasons: First, because it does not advise the public that the article comes from a single source; and, second, that if so, since the word is descriptive of the goods, the protection of the word as a trade-mark would be an infringement upon common speech, which, in the use of the word, likewise is descriptive."

And further the Court said:

"But although one may not have a right to have a tradename registered as a trade-mark, and under such law acquire the protection of the use of such name, he may acquire the right to the protection of such term by common law and exclusive of any trademark act, if, through usage, the term has acquired a secondary meaning, that it has come to indicate that the goods in connection with which it is used come from a single source, manufacturer or producer. If one can show that his mark is endowed with this quality, that the public identifies his mark with goods manufactured by him, then he is entitled to protection in its use. The crux of a secondary meaning is the origin of the goods from a single source * * *"

In the last cited case the Court held that "Nu Grape" and "Tru-Grape" were not confusingly similar, and the trial Court's refusal to grant an injunction was upheld in the above case.

In Beatrice Foods Co. v. Neosho Valley Cooperative Creamery Association, 297 F.2d 447 (10 Cir.), on an appeal from the District Court for the Northern District of Oklahoma, the Court found that the tradename "Meadow Sweet" did not infringe upon the tradename "Meadow Gold" when the Oklahoma test of confusion is applied. The Court set forth the test as follows:

"The test is whether the similitude in the labels would probably deceive a purchaser who exercises ordinary prudence, not the careless buyer who makes no examination."

See also Bardahl Oil Company v. Atomic Oil Company, an appeal from the Northern District of Oklahoma, 351 F.2d 148 (10 Cir.).

It should be noted at this point that there was no evidence in this case to show or tend to show that anyone was confused, and particularly there is no evidence to show that plaintiff's clients were in any wise deceived, or that defendant acquired any of plaintiff's clients.

An interesting case is Umpqua Broccoli Exchange v. Um-Qua Valley Broccoli

Growers, 117 Or. 678, 245 P. 324, wherein the Court said:

"In any case, to entitle the complaining corporation to an injunction, the name used by defendant, when not the same as that of plaintiff, must be so similar thereto that, under all the circumstances of locality, business, etc., its use is in itself reasonably calculated to deceive the public and result in injury to plaintiff, or else it must be used fraudulently in such a way as to have that effect."

In Lawyers Title Insurance Company v. Lawyers Title Insurance Corporation, 71 App.D.C. 120, 109 F.2d 35, the Court of Appeals, District of Columbia, the Court said:

"The probability of confusion is reduced further by the experienced and discriminating character of the clientele to which defendant and the plaintiff's combination appeal, and by the care defendant has taken to add distinguishing matter to its name in publicity and solicitation. Occasional misunderstanding may occur despite these precautions. But there is nothing to show probability of more than that, and in itself that does not justify the drastic relief here sought."

In Charles Hansen's Laboratory v. Kirk, 12 F.Supp. 361 (D.C.E.D.Pa.) the Court held:

"In other words, the plaintiff may acquire a right in a descriptive word if he has given that word a secondary meaning. His right is not the exclusive ownership or monopoly of the word. He can restrain others from using the word in any manner calculated to mislead the public with regard to the origin or ownership of the goods. But he cannot restrain others from using the word in connection with goods to which it properly applies and which it honestly describes, in a manner which involves no 'copy or colorable imitation' of the plaintiff's use. There may still be confusion. The plaintiff may still lose sales to persons who think they are buying his goods, in the same manner (though, perhaps, in greater degree) as in case of a personal or place name. That, however, is a drawback which must be considered when a dealer starts out to give a secondary meaning to an ordinary descriptive word. The broader the connotation of the word which he has thus attempted to appropriate, the narrower will his rights be against infringers. The field of fancy and imagination in the selection of arbitrary trademarks is so wide that there is little hardship in holding that every intendment of policy ought to be against the appropriation of words of common everyday usage."

In Diamond Drill Contracting Co. v. International Diamond Drill Contracting Co., 106 Wash. 72, 179 P. 120, is contained an illuminating discussion of claims of exclusive rights to descriptive terms. The Court then discusses the concept of secondary meaning, as follows:

" * * * [W]ords publici juris are not protected from use in their primary sense, but only in their secondary sense. The evidence does not show that the words 'Diamond Drill Contracting Company' have ceased to have their usual meaning as indicating a company engaged in the business of contracting to drill with diamond drills, and have now the meaning and are generally understood by the public as referring only to the respondent. The only evidence tending to show this was the evidence of one witness for the respondent, who testified that he knew of no other company by the name of 'Diamond Drill Contracting Company', and that to his mind that name meant the respondent. This evidence is not sufficient. The public interested must have been shown to have understood these words to have acquired a new meaning. The evidence only went to the extent of showing that the respondent had become favorably and extensively known, and enjoyed a good reputation

for integrity and ability. There is no question of fraud in any representations made by the appellant. As we have seen, there is no representation made by the appellant that its business was the business of respondent. The name it was using was being used without deception, and the words of that name, insofar as they are identical with respondent's name were merely descriptive of the business in which they were both engaged.
* * *

"The appellant had a right to use words which were descriptive of the business in which it was mutually engaged with the respondent; those words being ones which the public still used to indicate the business followed by both of them.

"Those cases in which we have heretofore protected a trade-name from unfair competition are cases in which the words descriptive of the business has been added some fanciful word or a word of personal or geographical significance, and partaking of the nature of a fanciful name, the entire name thus becoming something more than a mere description of the business in which the company using it was engaged. In these cases the originality of such combination has been protected. These cases are distinguished from the case at bar by the fact that here the respondent has added nothing to words merely descriptive of its business."

A recent case from the Supreme Court of Oklahoma, Carpet City v. Carpet Land, 335 P.2d 355, in its syllabus by the Court, said:

"One who conducts a particular business may appropriate to his exclusive use as his trade mark or name some symbol or name which has not been so appropriated by another, however, he cannot exclusively appropriate any designation or part of a designation which relates only to the name, quality or description of the thing or business or place where the thing is produced or the business carried on."

" 'Carpet' is a generic term applicable to all in the same business and may not be appropriated by one person or firm exclusively so that the use of the term in itself would make it unfair competition for a competitor in the same locality to adopt it as a part of its trade name."

▆ There is no showing in the evidence, of any consequence at least, that the defendant has in any way engaged in any unfair competition; has used no deception, and has not injured plaintiff in its business in any manner whatsoever, and there is no significant evidence that the names of plaintiff and defendant are so similar as to confuse an ordinary person of ordinary intelligence and observation in business matters, or that such person will certainly or probably be deceived. This is the Oklahoma rule. The mere possibility of deception and confusion is not sufficient.

The Court, after carefully considering this case, is not constrained on the meager evidence offered to grant the extraordinary relief prayed for. The plaintiff in this case, as this Court views the evidence, is merely seeking an injunction against the defendant because of some possibility in the future that there may be some confusion.

Therefore, judgment will be entered in favor of the defendant and also denying the plaintiff the relief sought.

Costs are taxed against the plaintiff.

An Order will be entered accordingly.